ATTORNEY AD LITEM: Vanessa Goss, Ivan Goss, 3817 Loma Dante, El Paso, TX 79938.
ATTORNEY FOR APPELLANT: Hon. Mark G. Briggs, Briggs & Associates, P. C., 3609 Montana Ave., El Paso, TX 79903.
ATTORNEY FOR APPELLEE: Hon. Mark T. Zuniga, Department of Family and Protective Services, 2401 Ridgepoint Drive, Bldg. H-2, Austin, TX 78754.
REAL PARTY IN INTEREST: Hon. Pedro Martin, 10213 Donway Pl., El Paso, TX 79925-6935.
ATTORNEY AD LITEM: Hon. Enrique Martin, 4026 N. Mesa St., Ste. G, El Paso, TX 79902.
Before McClure, C.J., Rodriguez, and Palafox, JJ.
OPINION
ANN CRAWFORD McCLURE, Chief Justice
This appeal is from a judgment terminating the parental rights of A.C. to her children, A.R.C., M.A.C., and H.M.C.[1] Finding the evidence legally and factually sufficient to support the best interest finding, we affirm.
FACTUAL SUMMARY
M.C. (Father) and A.C. (Mother) are the biological parents of seven-year-old A.R.C., six-year-old M.A.C., and four-year-old H.M.C. The oldest child was born in 2010 and the youngest child was born in February 2013.
Mother grew up in an abusive home and she has a history of assaultive behavior. In April 2009, Mother was a juvenile and living with her mother, L.C., and stepfather. Mother ran away from home because she claimed L.C. was abusive and had struck her with a closed fist numerous times. Mother showed the investigating police officer a bruise on her forearm received when she tried to block a punch from L.C. L.C., on the other hand, claimed that her daughter had punched her. Mother and L.C. also accused one another of using drugs. Approximately five months after this incident, Mother ran away again, *224 and L.C. reported to police that when she located Mother and attempted to make her return home, Mother assaulted her by striking her head with a closed fist and pulling her hair.
In July 2013, Mother reported to Father that she was drunk and asked him to pick up one of the children so that she could continue to "party." When Father arrived, he attempted to take the child and leave, but Mother refused to give him the child and struck him on the head. Father declined to prosecute the case against Mother. Mother claimed that she did not call Father, and that he instead became jealous upon seeing her walking with another man, and he assaulted her. The investigating officer determined that Mother's reported injuries were inconsistent with her account of the incident and she could not provide details about the assault. The prosecuting attorney declined to prosecute the case against Father due to a lack of credible evidence.
In October 2013, Mother and L.C. became involved in an argument over money, and Mother threatened to take her children and leave. L.C. told Mother that CPS had placed the children with her and Mother did not have a car or place to go, so Mother could not take the children. A third party attempted to intervene and Mother struck her on the face and scratched her. Mother then went into the kitchen where she retrieved a knife and threatened to kill herself, but L.C. was able to take the knife away from Mother. The third party declined to prosecute an assault case against Mother.
On December 26, 2013, a police officer conducted a traffic stop of a vehicle and smelled a strong odor of marihuana coming from the vehicle. An officer conducted a pat down search of the vehicle's occupants, including Mother, and discovered that Mother had a baggie of marihuana hidden in the waistband of her pants. Mother pled guilty and served five days in jail. The children stayed with L.C. while Mother was in jail.
In February 2014, a loss prevention officer stopped Mother at a Wal-Mart store after she attempted to steal several items. Mother became aggressive and threatened Wal-Mart personnel with a knife, but the loss prevention officer was able to disarm Mother. As she was taken into custody, Mother attempted to strike the loss prevention officers by elbowing them in the face. Mother was charged with robbery, but she pled guilty to the lesser-included offense of theft and was assessed a sentence of sixty days in jail. The children stayed with L.C. during Mother's incarceration. Following her release from jail on the theft charge, Mother was charged with committing unauthorized use of a motor vehicle and credit card abuse in June 2014. These charges were dismissed in 2015 based on Mother's participation in a federal drug treatment program.
In October 2014, Mother was stopped at the Ysleta Port of Entry pedestrian inspection lane after appearing to be disoriented. Mother and her companion stated they were U.S. citizens but they did not have any identification or documentation to present for entry into the United States. Mother denied having any weapons or contraband, but during the pat down search, a U.S. Customs and Borden Protection officer discovered an object in Mother's shorts. Mother initially claimed it was a tampon, but she began to cry and admitted she had hidden drugs in her genital area. Mother admitted that she had used methamphetamine three days earlier. Mother was arrested and charged with the federal offense of importing 180 grams of crystal methamphetamine into the United States. Mother remained confined for approximately eighteen months before being given *225 pre-trial release. The children had stayed with L.C. during Mother's confinement, but Mother and the children could not stay with L.C. as a condition of her pre-trial release due to L.C.'s known drug usage. Mother was arrested in June 2016 for violating this condition of pre-trial release. The Department investigated reports of neglectful supervision of the children by L.C. during June and August 2016. The children were removed from L.C.'s home in June 2016 but they returned to the home again in August 2016. The Department received a report in August 2016 that L.C. and her boyfriend were smoking marihuana in the home and not supervising the children. When the caseworker saw the children on August 28, 2016, they were unclean, their hair had not been combed, and they were barefooted.
Mother entered a plea of guilty to the federal drug offense on August 30, 2016 and was sentenced to serve forty-one months in the Federal Department of Corrections. At the time of trial in October 2017, she remained incarcerated under that sentence and is scheduled to be released in September 2018. The amended petition sought termination of Mother's parental rights under Section 161.001(b)(1)(D), (E), and (Q). See TEX.FAM.CODE ANN. § 161.001(b)(1)(D), (E), and (Q) (West Supp. 2017). Following the final hearing, the trial court entered judgment terminating Mother's parental rights based on findings that Mother (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children, pursuant to § 161.001(b)(l)(D) ; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, pursuant to § 161.001(b)(1)(E), and (3) knowingly engaged in criminal conduct that has resulted in Mother's conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of filing the petition, pursuant to § 161.001(b)(1)(Q). Mother filed notice of appeal.
BEST INTEREST
In a single issue, Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination is in the best interest of the children under Section 161.001(b)(2) of the Family Code. See TEX.FAM.CODE ANN. § 161.001(b)(2). She does not attack the sufficiency of the evidence supporting the predicate findings under Section 161.001(b)(1).
Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. See TEX.FAM.CODE ANN. § 161.001. Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. See id. Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact. Texas Department of Human Services v. Boyd , 727 S.W.2d 531, 533 (Tex. 1987) ; In the Interest of A.B.B. , 482 S.W.3d 135, 138 (Tex.App.-El Paso 2015, pet. dism'd w.o.j.). Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. In re A.V. , 113 S.W.3d 355, 362 (Tex. 2003).
Standards of Review
When reviewing the legal sufficiency of the evidence in a termination *226 case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." In the Interest of J.P.B., 180 S.W.3d 570, 573 (Tex. 2005), quoting In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002) ; see In re J.O.A., 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. In the Interest of J.P.B. , 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. In re J.P.B. , 180 S.W.3d at 573 ; In re J.F.C. , 96 S.W.3d at 266.
In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. See In re J.F.C. , 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. In re J.F.C. , 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. Id. If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. Id.
The Holley Factors
A determination of best interest necessitates a focus on the child, not the parent. See In the Interest of B.C.S. , 479 S.W.3d 918, 927 (Tex.App.-El Paso 2015, no pet.) ; In the Interest of R.F. , 115 S.W.3d 804, 812 (Tex.App.-Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. In re B.C.S. , 479 S.W.3d at 927. The Texas Supreme Court has enumerated certain factors which should be considered: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. Holley v. Adams , 544 S.W.2d 367, 372 (Tex. 1976) ("the Holley factors"). We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. In re B.C.S. , 479 S.W.3d at 927.
The first factor we must consider is the desires of the children, seven-year-old A.R.C., six-year-old M.A.C., and four-year-old H.M.C. Evidence that a child is well-cared for by his foster family, is bonded to his foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor. See In re R.A.G. , 545 S.W.3d 645, 652-53, 2017 WL 105131, at *4 (Tex.App.-El Paso 2017, no pet.) ; In re U.P. , 105 S.W.3d 222, 230 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). The children are currently placed with a great aunt, Y.T., and it is undisputed that they are well-cared for in this placement and have made substantial *227 progress. Their therapist explained that when she first began working with them, they had no rules, defied authority, were aggressive and lied, and made sexually inappropriate comments. They currently live in a structured home, and they follow rules and understand consequences. Although the children are bonded with Mother, they refer to L.C. as "Mom". They have remained in contact with Mother by telephone, but they have not expressed any desire to be with their Mother. In fact, the children have stated that they want to remain in their current placement. When the evidence is viewed in the light most favorable, it weighs in favor of the best interest finding. See In re J.M. and L.M. , 156 S.W.3d 696, 706 (Tex.App.-Dallas 2005, no pet.). Under a factual sufficiency review, this factor weights somewhat in favor of the best interest finding.
The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. A child's basic needs include food, shelter, clothing, routine medical care, and a safe, stimulating, and nurturing home environment. See In re S.H. , No. 02-17-00188-CV, 2017 WL 4542859, at *13 (Tex.App.-Fort Worth October 12, 2017, no pet.). It is well established that a parent's use of illegal drugs and drug-related criminal activity may qualify as conduct that endangers a child's physical and emotional well-being. See In re J.O.A. , 283 S.W.3d 336, 345 (Tex. 2009) ; In re J.T.G. , 121 S.W.3d 117, 125-26 (Tex.App.-Fort Worth 2003, no pet.). Evidence of past misconduct or neglect can be used to measure a parent's future conduct. In re Z.M. , 456 S.W.3d 677, 689 (Tex.App.-Texarkana 2015, no pet.) ; Williams v. Williams , 150 S.W.3d 436, 451 (Tex.App.-Austin 2004, pet. denied) ; see also Ray v. Burns , 832 S.W.2d 431, 435 (Tex.App.-Waco 1992, no writ) ("Past is often prologue.").
The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. Edwards v. Texas Department of Protective & Regulatory Services , 946 S.W.2d 130, 138 (Tex.App.-El Paso 1997, no pet.), disapproved of on other grounds by In re J.F.C. , 96 S.W.3d 256 (Tex. 2002) ; In re U.P., 105 S.W.3d at 230 (stating that children need permanency and security). A parent's incarceration is relevant to her ability to the meet the child's present and future physical and emotional needs. In re M.D.S. , 1 S.W.3d 190, 200 (Tex.App.-Amarillo 1999, no pet.). Further, a parent's incarceration at the time of trial makes the child's future uncertain. Id.
Mother has not challenged the sufficiency of the evidence supporting the predicate findings, which included finding that Mother knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, and she engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being. While these unchallenged findings do not relieve the Department of its burden to prove best interest, the evidence supporting these findings is probative of best interest. In re C.H. , 89 S.W.3d 17, 28 (Tex. 2002).
The children experienced trauma while living with both L.C. and Mother. The children reported that they had seen both Mother and L.C. engaging in sexual activities with men. As a result, the children made sexually inappropriate comments and demonstrated knowledge of the terms "blow job" and "humping." Further, one of the children had to be placed in a different home for a while after engaging in inappropriate *228 sexual conduct with the other children.
Mother has repeatedly engaged in criminal conduct and it has resulted in her confinement in jail or prison on several occasions. During these periods of confinement, Mother could not provide for the children's physical and emotional needs, and she knowingly placed or allowed the children to reside with L.C. who used drugs and neglected the children. Mother is currently serving a forty-one month sentence in federal prison for importing methamphetamine into the United States. There is also evidence that Mother has used drugs in the past and she is currently incarcerated on a drug-related offense. Based on this evidence, the trial court could have found that Mother is unable to provide for the children's emotional and physical needs now and in the future. Likewise, Mother's limited contact with the children during her incarceration exposed them to emotional danger now and will continue to do so in the future. See In re R.A.G. , 545 S.W.3d 645, 650-52, 2017 WL 105131, at *3 (Tex.App.-El Paso January 11, 2017, no pet.) ("A fact finder may infer that a parent's lack of contact with the child and absence from the child's life endangered the child's emotional well-being."). We conclude that the second and third factors weigh heavily in support of the best interest finding under both the legal and factual sufficiency standards.
We will consider the fourth and fifth factors together. The fourth factor is the parenting abilities of the individuals seeking custody. The fifth factor examines the programs available to assist those individuals to promote the child's best interest. In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children. D.O. v. Texas Department of Human Services , 851 S.W.2d 351, 356 (Tex.App.-Austin 1993, no writ), disapproved of on other grounds by In re J.F.C., 96 S.W.3d 256 (Tex. 2002). The record contains evidence that Mother has consistently neglected the children's physical and emotional needs. The neglect certainly occurred on those occasions when Mother was incarcerated, but it also occurred when she was present in the children's lives. The neglect of the children and Mother's drug usage and other misconduct which rendered her unable to provide for the children are indicators of her poor parenting abilities. There is no evidence that Mother is motivated to improve her parenting abilities and she failed to take advantage of the services offered by the Department. Mother reportedly completed a six-hour parenting class, but there is also evidence that she attended only two of six scheduled parenting sessions. The fourth and fifth factors weigh in favor of the best interest finding.
We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. The fact finder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. D.O. , 851 S.W.2d at 356. Mother objected to termination of her parental rights because she wants to maintain a relationship with the children. Mother testified that her release date is in September 2018, and she will be on supervised release for three years. Upon her release, she will be required to reside at a halfway house for six months. Mother intends to get a job when she is released and she plans to seek treatment for depression and bipolar disorder. Mother admitted that she would not be *229 able to act as the children's primary parent until sometime in 2019 or 2020. The Department's plan is for Mother's parental rights to be terminated and for the great aunt, Y.T., to adopt the children. Y.T. testified regarding the necessity for stability in the children's lives. She described the children as hard and streetwise when they began living with her, but she and her husband had worked hard to provide them with a stable home environment. Y.T. feared that if she was not allowed to adopt the children and Mother continued to be involved in their lives, the children would regress particularly if Mother began using drugs again or failed to make the children live by the rules established by Y.T. and her husband. If Y.T. could adopt the children, the children's medical needs would be covered by Medicaid and she could take advantage of the adoption subsidy to help provide for the children's other needs. Y.T. objected to co-parenting with Mother because they have different values and she believed the children would regress if Mother became involved in their lives again. From this evidence, the trial could find that adoption by Y.T. will allow the children an opportunity for stability and permanence. These factors weigh in favor of best interest.
The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. Both Mother and L.C. permitted the children to witness them engaging in sexual conduct with men, and Mother left the children in L.C.'s care even though she knew L.C. used drugs. Mother engaged in violence, criminal activity, and drug usage. Further, Mother did not provide a stable or structured environment for the children in the past, and due to her current incarceration in federal prison, she is unable to meet the children's physical and emotional needs. Based on this evidence, the court could have found that the existing parent-child relationships are not proper. This factor weighs heavily in support of the best interest finding.
The ninth factor is whether there is any excuse for the parent's acts or omissions. Mother did not offer any evidence at trial related to any excuses for her acts or omissions and her brief does not address this factor. The ninth factor supports the best interest finding.
Having reviewed all of the Holley factors, we conclude that the evidence is both legally and factually sufficient to establish a firm conviction or believe in the mind of the trial court that termination of Mother's parental rights is in the children's best interest. Issue One is overruled. Having overruled the sole issue presented, we affirm the judgment of the trial court terminating Mother's parental rights to the children.

To protect the identity of the children, the opinion will refer to the parents by pseudonyms and to the children and certain family members by their initials. See Tex.R.App.P. 9.8(b)(2).