# Court of Appeals
## Tenth Appellate District of Texas

10-25-00044-CV

In the Interest of B.B., S.B., and J.B., Children

On appeal from the
52nd District Court of Coryell County, Texas
Judge Cheryll Mabray, presiding
Trial Court Cause No. DC-24-55657

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

The father of B.B., J.B., and S.B. (Father) appeals from the trial court's order terminating his parental rights.[1]  Following a bench trial, the trial court determined that Father had violated Family Code subsections 161.001(b)(1)(D), (E), (N), and (O) and that termination was in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b).  In his sole issue, Father contends that the evidence was legally and factually insufficient to support the trial court's finding that termination was in the children's best interest.  We will affirm.

---

[1] The parental rights of the mother of B.B., J.B., and S.B. were also terminated, but she has not appealed.

## Authority

The standards of review for legal and factual sufficiency of the evidence in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264–68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). The trial court, as factfinder, is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the Department of Family and Protective Services (the Department) must establish by clear and convincing evidence two elements: (1) that the respondent parent committed one or more acts or omissions enumerated under subsection (b)(1), termed a predicate violation, and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.-G.*, 612 S.W.3d 373, 381 (Tex. App.—Waco 2020) (mem. op.), *aff'd*, 627 S.W.3d 304 (Tex. 2021). Proof of one element does not relieve the petitioner of the burden of proving the other. *J.F.-G.*, 612 S.W.3d at 381.

In this appeal, Father challenges the legal and factual sufficiency to support the trial court's finding regarding only the second element, *i.e.*, that termination was in the children's best interest. Accordingly, we need only address that element.

In determining the best interest of a child, several factors have been consistently considered, which were set out in the Texas Supreme Court's opinion of *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* This list is not exhaustive but simply identifies factors that have been or could be pertinent in the best-interest determination. *Id.* at 372. There is no requirement that all these factors be proven as a condition precedent to parental termination. *See C.H.*, 89 S.W.3d at 27. The absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *Id.* In fact, while no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the children's best interest. *In re J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

The *Holley* factors focus on the best interest of the children, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). And evidence relating to the predicate grounds under subsection 161.001(b)(1) may be relevant to determining the best interest of the children. *See C.H.*, 89 S.W.3d at 28.

**Discussion**

Father argues that the Department failed to present evidence of the needs and desires of the children, despite the children's ages and verbal ability to express their desires. Father further asserts that the evidence "focus[ed] on things that had happened years ago [and] not on how the changes the parents made now reduced the likelihood of relapse in the future." Father contends that the Department has therefore failed to present sufficient evidence to rebut the strong presumption that the best interest of the children will be served by preserving his relationship with his children. We disagree.

The first factor that we consider is the desires of the children. *See Holley*, 544 S.W.2d at 371–72. At the time of trial in January 2025, B.B., S.B., and J.B. were seven, five, and three years old, respectively. The children did not testify at trial, but the evidence indicated that they were bonded to both Father and the fictive kin parents with whom they had been placed. The CASA testified that S.B. has a "really good bond" with his fictive kin father and calls him "Dad." The CASA also stated that S.B. was sad about being removed from

his parents' care in April 2024. S.B. was very upset and crying about the experience. S.B. had nightmares following being removed from his parents' care, but the nightmares seemed to subside after the first few weeks. The caseworker for the Department further testified that before Father was incarcerated on October 20, 2024, S.B. asked to see him.

The second factor that we consider is the emotional and physical needs of the children now and in the future. *See id.* The CASA testified that when the children were removed from the parents' care in April 2024, seven-year-old B.B. was mostly nonverbal. By the time of trial, B.B. was more vocal but still not talking in full sentences. B.B. was also not yet fully potty-trained. Therefore, at that time, B.B. was in special-education classes at school, where he received occupational, physical, and speech therapy.

As for S.B., he was described at trial by the CASA as "a very traditional five-year-old" who is very talkative and sweet. The CASA further stated that she has seen S.B. flourish by having the very defined routine that he has at the fictive kin placement. The CASA said that S.B. seems more secure and comfortable. Finally, the CASA testified that by the time of trial, three-year-old J.B. was babbling and playing with his siblings and had really blossomed since being removed from his parents' care.

On the other hand, at the time of trial, Father had been in the Coryell County Jail since October 20, 2024. Father explained that he was jailed after

the State filed a motion to revoke his probation. He had previously received a ten-year sentence, probated for ten years, for the offense of manufacture or delivery of a controlled substance. Furthermore, at the time of trial, Father had a new charge for manufacture or delivery of a controlled substance in addition to the motion to revoke.

The need for permanence is the paramount consideration for the children's present and future physical and emotional needs. *In re A.R.C.*, 551 S.W.3d 221, 227 (Tex. App.—El Paso 2018, no pet.); *Dupree*, 907 S.W.2d at 87. A parent's incarceration is relevant to his ability to meet the children's present and future physical and emotional needs. *A.R.C.*, 551 S.W.3d at 227. Further, a parent's incarceration at the time of trial makes the children's future uncertain. *Id.*

The third factor that we consider is the emotional and physical danger to the children now and in the future. *See Holley*, 544 S.W.2d at 371–72. Regarding this factor, Father asserts that the record does not include any evidence of the present emotional and physical danger to the children. But evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."); *see also In re V.A.*, No. 13-06-00237-CV, 2007 WL 293023, at *5–6 (Tex. App.—Corpus Christi–Edinburg Feb. 1, 2007,

no pet.) (mem. op.) (considering parent's past history of unstable housing, unstable employment, unstable relationships, and drug usage).

As stated above, Father has not challenged the sufficiency of the evidence supporting the predicate findings, which included finding that Father knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and finding that Father engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). While these unchallenged findings do not relieve the Department of its burden to prove best interest, the evidence supporting these findings may also be probative of best interest. *See C.H.*, 89 S.W.3d at 28.

The caseworker in this case testified that the parents' history with the Department dates to 2017. B.B. was removed from the parents' care at that time because of medical neglect and drug use. The parents thereafter worked their service plan, and B.B. was eventually returned to the parents' care. In 2022, all three children were then removed from the parents' care because S.B. and J.B. tested positive for methamphetamines. However, again, the parents worked their service plan, and the children were eventually returned to the parents' care. But in April 2024, all three children were again removed from the parents' care. At that time, S.B. and J.B., along with the parents, tested

positive for methamphetamines. It is well established that a parent's use of illegal drugs and drug-related criminal activity may qualify as conduct that endangers a child's physical and emotional well-being. *A.R.C.*, 551 S.W.3d at 227; *see J.O.A.*, 293 S.W.3d at 345.

Father testified that during the time leading up to the children being removed from his care, he was living in a home with the children, his wife who is also the mother of the children, his parents, A.H. who had been Father's girlfriend when she first moved in, A.H.'s children, and A.H.'s babysitter. Father further admitted that all the adults in the home except for his parents were using methamphetamines. Father stated at trial that he would not refer to A.H.'s babysitter as a drug dealer, but Father admitted that A.H.'s babysitter provided drugs to him, his wife, and A.H. Father further explained that he did not use drugs in front of his children but that the adults did use methamphetamines in the garage of the home. When asked if the garage was a separate structure from his home, Father replied that it was not; the garage was connected to the home.

The evidence further showed that not only did Father use illegal drugs before the children were removed from his care but that Father continued to use illegal drugs during the pendency of this case. When the children were removed from his care in April 2024, Father's nail drug test results were positive for amphetamines, methamphetamines, and marijuana. In July 2024,

Father's hair-follicle drug test results were again positive for amphetamines, methamphetamines, and marijuana. In August 2024, Father's hair-follicle drug test results were then positive for amphetamines and methamphetamines. And in October 2024, Father's hair-follicle drug test results were positive for methamphetamines even though the caseworker testified that Father had completed inpatient rehab on October 7, 2024. Father testified that he had last used methamphetamines about ten months before the date of trial and had no explanation for how he could have tested positive in October 2024.

The fourth and fifth factors that we consider are the parental abilities of the individuals seeking custody and the programs available to assist those individuals. *See Holley*, 544 S.W.2d at 371–72. Father asserts that the record is devoid of evidence regarding his ability to care for the children. However, in reviewing the parental abilities of a parent, a factfinder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children. *In re I.D.G.*, 579 S.W.3d 842, 854 (Tex. App.—El Paso 2019, pet. denied). A factfinder "may infer from a parent's past inability to meet a child's physical and emotional needs an inability or unwillingness to meet a child's needs in the future." *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The evidence in this case showed that Father had a history of drug abuse and that the children had twice been removed from Father's care because they had tested positive for methamphetamines. Furthermore, at the time of trial, Father had been in the Coryell County Jail since October 2024. The caseworker testified that before going to jail, Father had worked some services. He had attended therapy and protective parenting. But even evidence of a recent improvement does not absolve a parent of a history of irresponsible choices. *In re A.M.*, 385 S.W.3d 74, 83 (Tex. App.—Waco 2012, pet. denied).

The caseworker further testified that Father had completed a psychological evaluation that indicated that Father did not demonstrate the skills necessary to provide proper parenting care to his children. Regarding Father's parenting abilities, the evaluation noted that Father lacked insight into his problems. The evaluation further stated that Father did not demonstrate the skills necessary to provide proper parental care to his children due to his failure to deal with his anger, drug abuse, and marital problems. The psychologist therefore stated in the evaluation that he could not at that time, nor in the future, foresee Father becoming competent or minimally adequate to parent a child.

On the other hand, the caseworker testified that the children were placed with fictive kin who were family friends through church. The caseworker stated that although the fictive kin parents had nine children in their care at

the time of trial, the fictive kin parents had done a great job of providing for the children. The CASA also testified that the fictive kin parents had been dedicated to working with the children, and the CASA detailed how each of the children had grown and "blossomed" in the care of the fictive kin parents.

The sixth and seventh factors that we consider are the plans for the children by the individuals or agency seeking custody and the stability of the home or proposed placement. *See Holley*, 544 S.W.2d at 371–72. The factfinder may compare the parent's and the Department's plans for the child and consider "whether the plans and expectations of each party are realistic or weak and ill-defined." *J.D.*, 436 S.W.3d at 119–20. A parent's failure to show that he or she is stable enough to parent children for any prolonged period entitles the factfinder "to determine that [the] pattern would likely continue and that permanency could only be achieved through termination and adoption." *In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015, at *9 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.). A factfinder may also consider the consequences of its failure to terminate parental rights and that the best interest of the children may be served by termination so that adoption may occur rather than the temporary foster-care arrangement that would result if termination did not occur. *In re B.H.R.*, 535 S.W.3d 114, 124 (Tex. App.—Texarkana 2017, no pet.). The goal of establishing a stable,

permanent home for a child is a compelling state interest. *Dupree*, 907 S.W.2d at 87.

Here, the caseworker testified that the fictive kin parents are willing to adopt all three children. On the other hand, as stated above, at the time of trial, Father had been in the Coryell County Jail since October 2024. Father nevertheless argues in his brief that his parents' home "shows signs of providing continued stability for the children." But the caseworker confirmed at trial that the children had been living in that very home on both occasions when two of the children tested positive for methamphetamines, causing all three children to be removed from their parents' care.

The eighth and ninth factors that we consider are the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one and any excuse for the acts or omissions of the parent. *See Holley*, 544 S.W.2d at 371–72. The evidence discussed above indicates that Father's relationship with B.B., S.B., and J.B. is not a proper one, and any excuses for Father's acts or omissions have been discussed above.

There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). However, considering all the evidence here in the light most favorable to the trial court's finding and considering the evidence as a whole, we hold that a reasonable factfinder could have formed a

firm belief or conviction that termination of Father's parental rights was in the children's best interest. Accordingly, we overrule Father's sole issue and affirm the trial court's order of termination.

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: June 26, 2025

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
CV06

