# Court of Appeals
## Tenth Appellate District of Texas

---

### 10-25-00191-CV

---

In the Interest of F.C. and A.G.C., Children,

---

On appeal from the
82nd District Court of Robertson County, Texas
Judge Bryan F. Russ Jr., presiding
Trial Court Cause No. 24-06-21875-CV

---

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

### MEMORANDUM OPINION

Following a bench trial, the parental rights of the father of F.C and A.G.C. (Father) were terminated. The trial court found by clear and convincing evidence that Father had violated Family Code subsections 161.001(b)(1)(D) and (E) and that termination was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b). In two issues, Father contends that the evidence was legally and factually insufficient to support the trial court's termination findings. We will affirm.

## A. Standard of Review

The standards of review for legal and factual sufficiency of the evidence in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264–68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). In a bench trial, the trial court, as factfinder, is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the Department of Family and Protective Services (the Department) must establish by clear and convincing evidence two elements: (1) that the respondent parent committed one or more acts or omissions enumerated under subsection (b)(1), termed a predicate violation, and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.-G.*, 612 S.W.3d 373, 381 (Tex. App.—Waco 2020) (mem. op.), aff'd, 627 S.W.3d 304 (Tex. 2021). Proof of one element does not relieve the petitioner of the burden of proving the other. *J.F.-G.*, 612 S.W.3d at 381.

## B. Predicate Violations

In his sole issue, Father complains that the evidence was legally and factually insufficient for the trial court to have found that he committed the predicate grounds in Section 161.001(b)(1)(D) and (E). The termination

judgment reflects that Father's parental rights were terminated based on two predicate grounds: endangering environment (Subsection (D)); endangering conduct (Subsection (E)).  *See* TEX. FAM. CODE ANN. § 161.001(b)(1).

Termination under subsection (E) requires clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child."  TEX. FAM. CODE ANN. §161.001(b)(1)(E).  To "endanger" means to expose the child to loss or injury, to jeopardize.  *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).  The relevant inquiry under subsection (E) is whether sufficient evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act.  *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied).  However, it is not necessary that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533.  To determine whether termination is necessary, courts look to parental conduct both before and after the child's birth.  *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied).

Scienter is not required for a parent's own acts to constitute endangerment under subsection (E).  *See In re L.S.*, No. 10-22-00119-CV, 2022 WL 3655395, at *2 (Tex. App.—Waco Aug. 24, 2022, no pet.) (mem. op.).  It is

also not necessary to show that the parent's conduct was directed at the child or that the child suffered actual injury. *Boyd*, 727 S.W.2d at 533. The specific danger to the child's well-being may be inferred from the parent's misconduct alone. *Id.* Furthermore, we may consider conduct both before and after the child's removal in an analysis under subsection (E). *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). If the endangering person is someone other than the appealing parent, then the parent generally must have known of the other person's endangering conduct. *T. D. v. Tex. Dep't of Family & Protective Services*, 683 S.W.3d 901, 913 (Tex. App.—Austin 2024, no pet.).

The evidence here shows many circumstances relevant under Paragraph (D) and (E). Because the evidence is interrelated concerning these two statutory grounds for termination, we consolidate our examination of the evidence as to both grounds. *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied).

First, the evidence shows a history of drug use by both Father and Mother. Evidence of a parent's drug use is relevant when accompanied by "additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's 'ability to parent.'" *In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024). Additionally, drug use is a condition which can indicate instability in the home environment because

it exposes the child to the possibility that the parent may be impaired or imprisoned. *See In re J.F.-G.*, 612 S.W.3d 373, 386 (Tex. App.—Waco 2020), aff'd, 627 S.W.3d 304 (Tex. 2021). Father testified that he first started using drugs at the age of seventeen, and that he has a history of marijuana, cocaine, and methamphetamine use. Father also testified that the children had been temporarily removed twice due to his and Mother's methamphetamine and marijuana use. Father also gave conflicting testimony that he had been using drugs again up until his current incarceration. Gabriel Milam, the Department case worker, testified that there were reports of continued drug use by both Father and Mother and that one of the Department's concerns with returning the children to Father was whether he could maintain sobriety.

Second, the evidence shows Father has a history of domestic violence claims against him. Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment. *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied). Father testified that he has a conviction for felony assault family violence against his ex-wife. He also confirmed there had been multiple allegations of domestic violence made against him by Mother, although none of the allegations resulted in convictions.

Third, the evidence shows a pattern of Father allowing the children to remain around Mother despite Mother's conduct. Father testified that Mother

had used drugs for approximately seventy-five percent of the children's lives. He also stated that she would leave for long periods of time, but that he would allow her to return and be around the children despite knowing about her drug use. Father admitted that Mother's inconsistent presence in the children's lives was damaging to their emotional well-being. Father also testified that he knew Mother was involved with prostitution, drug dealers, and gang or cartel members. He stated that some of the people she had dealings with would come to the house where the children lived.

Finally, the evidence shows Father has a history of incarceration and that he was convicted and incarcerated again after the children were removed. A parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment. *Interest of J.F.-G.*, 627 S.W.3d 304, 312–13 (Tex. 2021). Father's history of incarceration began before the children were born. He testified that he has four total convictions, three of which are felonies. His most recent conviction was for burglary of a habitation, for which he was incarcerated at the time of the final hearing. The trial court could have inferred from Father's repeated criminal activity and numerous convictions that such activity would occur in the future. *Interest of J.F.-G.*, 612 S.W.3d 373, 383 (Tex. App.—Waco 2020), aff'd, 627 S.W.3d 304 (Tex. 2021).

Considering all the evidence presented in this case in the light most favorable to the trial court's finding and considering the evidence as a whole, we conclude that the evidence was legally and factually sufficient to support termination of Father's parental rights under Paragraphs (D) and (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1).

### C. Best Interest of the Children

Father next contends that the evidence was insufficient to support the trial court's finding that termination was in the best interest of the children.

In determining the best interest of a child, several factors have been consistently considered, which were set out in the Supreme Court of Texas's opinion of *Holley v. Adams*. 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id*. This list is not exhaustive but simply identifies factors that have been or could be pertinent in the best-interest determination. *Id*. at 372. There is no requirement that all these factors be proven as a condition

precedent to parental termination. *See C.H.*, 89 S.W.3d at 27. The absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *Id.* In fact, while no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

The Holley factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). And evidence relating to the predicate grounds under subsection 161.001(b)(1) may be relevant to determining the best interest of the child. *See C.H.*, 89 S.W.3d at 28.

Regarding the emotional and physical needs of the children now and in the future, the need for permanence is the paramount consideration. *In re A.R.C.*, 551 S.W.3d 221, 227 (Tex. App.—El Paso 2018, no pet.); *Dupree*, 907 S.W.2d at 87. A parent's incarceration is relevant to his ability to meet the children's present and future physical and emotional needs. *A.R.C.*, 551 S.W.3d at 227. A parent's incarceration at the time of trial makes the children's future uncertain. *Id.* Here, Milam testified that the children could not be returned to Father at the time of trial because Father was currently incarcerated.

Regarding the emotional and physical danger to the children now and in the future, evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."); *see also In re V.A.*, No. 13-06-00237-CV, 2007 WL 293023, at *5–6 (Tex. App.—Corpus Christi–Edinburg Feb. 1, 2007, no pet.) (mem. op.) (considering parent's past history of unstable housing, unstable employment, unstable relationships, and drug usage); *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) (evidence of continuing drug abuse supports a finding that parent poses a present and future risk of physical or emotional danger to the child). We already discussed that the evidence, as outlined above, indicates that Father not only failed to act to protect the children from Mother's behavior but that he participated at times in acts that endangered the physical or emotional well-being of the children.

Regarding the plans for the children by the individuals or agency seeking custody and the stability of the home or proposed placement, the factfinder may compare the parent's and the Department's plans for the child and consider "whether the plans and expectations of each party are realistic or weak and ill-defined." *In re J.D.*, 436 S.W.3d 105, 119–20 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A parent's failure to show that he or she is stable

enough to parent children for any prolonged period entitles the factfinder "to determine that [the] pattern would likely continue and that permanency could only be achieved through termination and adoption." *In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015, at *9 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.). A factfinder may also consider the consequences of its failure to terminate parental rights and that the best interest of the children may be served by termination so that adoption may occur rather than the temporary foster-care arrangement that would result if termination did not occur. *In re B.H.R.*, 535 S.W.3d 114, 124 (Tex. App.—Texarkana 2017, no pet.). The goal of establishing a stable, permanent home for a child is a compelling state interest. *Dupree*, 907 S.W.2d at 87.

Father testified that while he already "made parole," he had to complete a six-month drug rehabilitation program before he was able to be released from prison. Father's plan was to "complete the drug rehabilitation program and get out . . . on parole, and start the process of finding a job and getting a place" for himself and the children. When asked what the children are supposed to do in the meantime, he responded that they would be with CPS or another placement. Father had offered a couple names of people who could care for the children, but none of them were cleared by the Department as suitable environments for the children.

On the other hand, Milam testified that while the children had trouble adjusting to foster placement initially, they have shown improvement over time, particularly in their most recent placement. He stated that the children were "much skinnier" and "emotionally unstable" when they first came into care, but that they had shown remarkable improvement. Milam also testified that there is interest in adoption from families licensed through the same licensing agency as the current foster placement.

There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). However, considering all the evidence here in the light most favorable to the trial court's finding and considering the evidence as a whole, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination of Father's parental rights was in the best interest of all the children.

In light of the foregoing, we overrule Father's issues and affirm the trial court's order of termination.

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  November 20, 2025

Before Chief Justice Johnson,
   Justice Smith, and
   Justice Harris
Affirm
CV06

