# Court of Appeals
## Tenth Appellate District of Texas

10-25-00365-CV

In the Interest of K.A.E.E. and K.M.-A.E., Children

On appeal from the
474th District Court of McLennan County, Texas
Judge Nikki Mundkowsky, presiding
Trial Court Cause No. 2024-240-6

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

Following a bench trial, the parental rights of K.E. (Father) and D.T. (Mother) to the children, K.A.E.E. and K.M.-A.E, were terminated. The trial court found by clear and convincing evidence that Father and Mother had violated Family Code subsection 161.001(b)(1)(D) and (E) and termination was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b). Father and Mother appealed. We will affirm.

A. Mother's Appeal

Mother raises two issues in her brief. First, she contends that the evidence was insufficient to support a (D) and (E) ground termination. Second, she argues that termination was not in the best interest of the children.

1. Standard of Review

The standards of review for legal and factual sufficiency of the evidence in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264–68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). In a bench trial, the trial court, as factfinder, is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the Department of Family and Protective Services (the Department) must establish by clear and convincing evidence two elements: (1) that the respondent parent committed one or more acts or omissions enumerated under subsection (b)(1), termed a predicate violation, and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.-G.*, 612 S.W.3d 373, 381 (Tex. App.—Waco 2020) (mem. op.), aff'd, 627 S.W.3d 304 (Tex. 2021). Proof of one element does not

relieve the petitioner of the burden of proving the other. *J.F.-G.*, 612 S.W.3d at 381.

2. Section 161.001(b)(1)(D) and (E)

In her first issue, Mother argues that the evidence was legally and factually insufficient for the trial court to have found that she committed the predicate grounds in Section 161.001(b)(1)(D) and (E). The termination judgment reflects that Mother's parental rights were terminated based on two predicate grounds: endangering environment (Subsection (D)) and endangering conduct (Subsection (E)). *See* TEX. FAM. CODE ANN. § 161.001(b)(1).

Termination under subsection (E) requires clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. §161.001(b)(1)(E). To "endanger" means to expose the child to loss or injury, to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The relevant inquiry under subsection (E) is whether sufficient evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied). However, it is not necessary

that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533. To determine whether termination is necessary, courts look to parental conduct both before and after the child's birth. *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied).

Scienter is not required for a parent's own acts to constitute endangerment under subsection (E). *See In re L.S.*, No. 10-22-00119-CV, 2022 WL 3655395, at *2 (Tex. App.—Waco Aug. 24, 2022, no pet.) (mem. op.). It is also not necessary to show that the parent's conduct was directed at the child or that the child suffered actual injury. *Boyd*, 727 S.W.2d at 533. The specific danger to the child's well-being may be inferred from the parent's misconduct alone. *Id.* Furthermore, we may consider conduct both before and after the child's removal in an analysis under subsection (E). *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). If the endangering person is someone other than the appealing parent, then the parent generally must have known of the other person's endangering conduct. *T. D. v. Tex. Dep't of Family & Protective Services*, 683 S.W.3d 901, 913 (Tex. App.—Austin 2024, no pet.).

The evidence here shows many circumstances relevant under Paragraph (D) and (E). Because the evidence is interrelated concerning these two

statutory grounds for termination, we consolidate our examination of the evidence as to both grounds. *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.— Fort Worth 2004, pet. denied).

Olga Solyakova, the initial Department investigator on the case, testified about how the Department got involved with the parents and children. When the Department first became involved, efforts were made to keep the children with Mother. The primary concerns initially were allegations of domestic violence and drug use. Following an incident of alleged domestic violence which left Mother with a black eye, the Department connected Mother with the Family Abuse Shelter, where she stayed with the children for a period of time. Mother did not remain at the shelter or engage in their services, but instead, she returned to Delta Inn, where she had been living with the children prior to the incident. The Department put a safety plan in place which included not allowing Father to have contact with the children and engaging in non-residential services at the shelter. Mother expressed interest in returning to her family in Michigan because she did not have any support in Texas besides Father, so the Department helped search for resources to facilitate the move. Ultimately, Mother did not use the resources provided for her to help facilitate her leaving Father because she did not want her family to know she was in Texas with Father. Mother also rejected further plans to

leave Texas, telling the Department that Father had gotten a good job and was helping out, so she did not want to leave. When the Department made an unannounced home visit, Father was found living with Mother and children again, in violation of the service plan. Solyakova also testified that the Department received additional information of Mother and Father's history prior to living in Texas, which included an extensive history of domestic violence between them and services had already been offered to them. Specifically, the family ended up in Texas because the Father took the children and left Michigan, stopping in Alabama for a time before continuing to Texas. Mother left her other children with their fathers in order to come to Texas to get K.A.E.E. and K.M.-A.E., but Mother ended up staying in Texas with Father. Solyakova also testified that Mother did not take accountability for the effects on the children of being in a home with domestic violence.

Danielle Moses, another Department caseworker, testified about the Department's involvement following the removal of the children. Both Mother and Father were placed on family service plans which included domestic violence service, parenting classes, therapy, anger management, and substance abuse classes. Both parents had positive drug tests, both hair follicle and urinalysis, or missed drug tests during the pendency of the case. During the pendency of the case, there were also additional police callouts

relating to domestic violence or other issues which led the Department to believe that the concerns leading to the initial involvement from the Department had not been addressed. Moses also testified to ongoing concerns of a lack of accountability from both Mother and Father and minimizing the issues which led to the Department being involved.

Considering all the evidence presented in this case in the light most favorable to the trial court's finding and considering the evidence as a whole, we conclude that the evidence was legally and factually sufficient to establish that Mother engaged in conduct that endangered the physical or emotional well-being of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

Therefore, we overrule Mother's first issue.

3. Best Interest

In her second issue, Mother argues that the evidence presented was insufficient to establish that termination of the parent-child relationship between Mother and the children would be in the best interests of the children.

In determining the best interest of a child, several factors have been consistently considered, which were set out in the Supreme Court of Texas's opinion of *Holley v. Adams*. 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the

child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* This list is not exhaustive, but simply identifies factors that have been or could be pertinent in the best-interest determination. *Id.* At 372. There is no requirement that all these factors be proven as a condition precedent to parental termination. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *Id.* In fact, while no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). And evidence relating to the predicate grounds under subsection 161.001(b)(1) may be relevant to determining the best interest of the child. *See C.H.*, 89 S.W.3d at 28.

Regarding the emotional and physical needs of the children now and in the future, the need for permanence is the paramount consideration. *In re A.R.C.*, 551 S.W.3d 221, 227 (Tex. App.—El Paso 2018, no pet.); *Dupree*, 907 S.W.2d at 87. Regarding the emotional and physical danger to the children now and in the future, evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."). We already discussed that the evidence, as outlined above, indicates that Mother consistently refused services and resources to get the children away from the instability of living in an environment with domestic violence, which led to the Department's concerns that Mother was not taking steps to properly protect the children. Trena Goldsmith, the CASA supervisor, testified that there were concerns due to the ongoing drug use and a report of an additional instance of domestic violence in the home as recently as a month before the final hearing, and therefore, she recommended that termination was in the children's best interest.

The caseworker, Danielle Moses, testified that the children are doing well in their foster placement. Despite some behavioral issues following visits, the children are doing well in school, are involved in extracurricular activities,

and are in therapy. All their needs are being met by the foster placement. Additionally, the foster parents expressed an intent to adopt the children.

Based on the foregoing evidence, the trial could have reasonably formed a firm belief or conviction that termination of Mother's parental rights to the children is in the children's best interest.

Accordingly, Mother's second issue is overruled.

### B. Father's Appeal

Father filed a notice of appeal from the trial court's order terminating his parental rights to K.A.E.E. and K.M.-A.E.[1] Counsel for Father has now filed an *Anders* brief, asserting that they diligently reviewed the record and that, in their opinion, the appeal is frivolous. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *In re E.L.Y.*, 69 S.W.3d 838, 841 (Tex. App.—Waco 2002, order) (per curiam) (applying *Anders* to termination appeal).

Counsel's brief meets the requirements of *Anders*; it presents a professional evaluation demonstrating why there are no arguable grounds to advance on appeal. *See In re Schulman*, 252 S.W.3d 403, 406 n.9 (Tex. Crim. App. 2008) ("In Texas, an *Anders* brief need not specifically advance 'arguable'

---

[1] The trial court found by clear and convincing evidence that Father had violated Family Code subsection 161.001(b)(1)(D) and (E) and that termination was in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1).

points of error if counsel finds none, but it must provide record references to the facts and procedural history and set out pertinent legal authorities."); *Stafford v. State*, 813 S.W.2d 503, 510 n.3 (Tex. Crim. App. 1991). Counsel has carefully discussed why, under controlling authority, there is no reversible error in the trial court's order of termination. Counsel has further informed us that he has served appellant with a copy of his *Anders* brief, informed appellant of his right to review the appellate record and to file a pro se response, and provided appellant with a form motion for pro se access to the appellate record. *See Anders*, 386 U.S. at 744, 87 S.Ct. at 1400; *Kelly v. State*, 436 S.W.3d 313, 319–20 (Tex. Crim. App. 2014) ; *Stafford*, 813 S.W.2d at 510 n.3; *High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. [Panel Op.] 1978); *see also Schulman*, 252 S.W.3d at 408–09. By letter, we also informed Father of his right to review the record and to file a pro se response. He did not file a pro se response.

Upon receiving an *Anders* brief, we must conduct a full examination of all the proceedings to determine whether the appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 349–50, 102 L.Ed.2d 300 (1988). An appeal is "wholly frivolous" or "without merit" when it "lacks any basis in law or fact." *McCoy v. Court of Appeals*, 486 U.S. 429, 438 n.10, 108 S.Ct. 1895, 1902 n.10, 100 L.Ed.2d 440 (1988). We have reviewed the entire record and counsel's brief and have found nothing that would arguably support an

appeal.[2] *See Bledsoe v. State*, 178 S.W.3d 824, 827–28 (Tex. Crim. App. 2005) ("Due to the nature of Anders briefs, by indicating in the opinion that it considered the issues raised in the briefs and reviewed the record for reversible error but found none, the court of appeals met the requirements of Texas Rule of Appellate Procedure 47.1."); *Stafford*, 813 S.W.2d at 509.

Counsel has filed a motion to withdraw as was historically required to comply with the procedures set forth in *Anders* and its Texas progeny. However, the Texas Supreme Court has stated that the lack of an arguable issue and the subsequent filing of a motion to withdraw and an *Anders* brief in support may not be considered "good cause" for purposes of granting the *Anders* motion to withdraw pursuant to the Family Code. *See In re P.M.*, 520 S.W.3d 24, 27–28 (Tex. 2016) (per curiam) ("[A]n *Anders* motion to withdraw brought in the court of appeals, in the absence of additional grounds for withdrawal, may be premature."). Counsel does not set forth any

---

[2] Counsel reviewed the sufficiency of the evidence supporting the trial court's findings as to Father under Family Code subsections 161.001(b)(1)(E) and determined that it would be frivolous to attack the findings. We also conclude that the evidence is sufficient to establish that Father violated subsection (E). *See In re N.G.*, 577 S.W.3d 230, 232–33, 237 (Tex. 2019) (per curiam) (holding due process and due course of law requirements mandate appellate court detail its analysis if appellate court affirms termination on either subsection (D) or (E)). As stated above, many factors can support an endangerment finding, including a parent's failure to complete a court-ordered service plan, missed visits with the child, and conduct that generally subjects a child to a life of instability and uncertainty. *In re A.R.M.*, 593 S.W.3d 358, 371-372 (Tex. App.—Dallas 2018, pet. denied). The record here shows the Mother and Father had an extensive history of domestic violence, with both being the aggressor at different times. Testimony also showed a pattern of minimizing or disregarding the effects of domestic violence on the mental health and well-being of their children, despite both Mother and Father receiving services and education related to this issue. In addition to the domestic violence, both Mother and Father had ongoing drug use both before and during the case.

"good cause" outside the filing of the *Anders* brief in his motion to withdraw. We will therefore deny the motion to withdraw. Consequently, if Appellant desires to file a petition for review, counsel is still under a duty to timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief." *See id.*; *see also* TEX. FAM. CODE ANN. § 107.016.

C. Conclusion

In light of the foregoing, we affirm the trial court's order of termination.

MATT JOHNSON<br>
Chief Justice

OPINION DELIVERED and FILED: March 19, 2026

Before Chief Justice Johnson,
  Justice Smith, and
  Justice Harris
Motion denied
Affirmed
CV06

