Byron DUPREE and Bridgette
Turner, Appellants,

v.

TEXAS DEPARTMENT OF PRO-
TECTIVE AND REGULATO-
RY SERVICES, Appellee.

No. 05–94–00642–CV.

Court of Appeals of Texas,
Dallas.

Aug. 30, 1995.

Tim Freemyer, Guardian Ad Litem, Dallas.

Noemi A. Collie, Dallas, for appellants.

April E. Smith, Assistant District Attorney, Dallas, Gregory L. Housewirth, Dallas, for appellee.

Before MORRIS, WHITTINGTON, and WRIGHT, JJ.

## OPINION

WRIGHT, Justice.

Byron Dupree and Bridgette Turner appeal the trial court's judgment terminating their parental rights to their child. We affirm the trial court's judgment.

### DUPREE AND TURNER'S CONTENTIONS

In his first and second points of error, Dupree asserts the evidence was legally and factually insufficient to support the jury's finding that "he knowingly placed the child in conditions or surroundings which endangered the physical and emotional well-being of the child, or knowingly allowed the child to remain in conditions or surroundings which endangered the physical and emotional well-being of the child." In his third and fourth points of error, Dupree asserts the evidence was legally and factually insufficient to support the jury's finding that he engaged in conduct which endangered the physical and emotional well-being of the child or knowingly placed the child with persons who engaged in conduct which endangered the physical and emotional well being of the child. In his fifth and sixth points of error, Dupree argues the evidence was legally and factually insufficient to support the jury's finding that termination of his parental rights was in the best interest of the child.

In her first point of error, Turner asserts the trial court erred in terminating Dupree's parental rights. Her argument under her

first point of error parallels Dupree's points of error. In her second point of error, Turner asserts the evidence was legally and factually insufficient to support the jury's findings that (1) she engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical and emotional well-being of the child; (2) she knowingly placed or allowed the child to remain in conditions or surroundings that endangered the child's well-being; and (3) termination of her parental rights was in the best interest of the child.

## BACKGROUND

On November 17, 1992, Turner gave birth to a child fathered by her boyfriend, Dupree. Turner admitted to hospital officials she used cocaine during her pregnancy, including the day she gave birth. Turner was incarcerated for violating the terms of her parole when this trial took place.

The fact that Dupree is the father is undisputed. Dupree executed a voluntary Statement of Paternity and sought to be named the child's sole managing conservator. The court entered an order establishing the parent-child relationship between Dupree and the child.

When the child was ready to be released from Baylor Hospital, Child Protective Services (CPS) immediately removed the child and placed the child in foster care. CPS filed a petition to terminate both appellants' parental rights. On March 7, 1993, after a jury trial, the trial judge terminated both appellants' parental rights.

## STANDARD OF REVIEW

When reviewing a "no evidence" or a "legally insufficient" point of error, we consider only the evidence and inferences tending to support the dispositive findings and disregard all evidence and inferences to the contrary. *Sylvia M. v. Dallas County Child Welfare Unit,* 771 S.W.2d 198, 199 (Tex.App.—Dallas 1989, no writ). If there is more than a scintilla of evidence supporting the dispositive findings, we uphold the jury findings. *Sylvia M.,* 771 S.W.2d at 200.

When deciding "factually insufficient" points of error, we consider all the evidence, including evidence contrary to the judgment. *Sylvia M.,* 771 S.W.2d at 200. We set aside the jury's verdict only if the evidence is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Sylvia M.,* 771 S.W.2d at 200.

When terminating parental rights, each required finding must be based on clear and convincing evidence. TEX.FAM.CODE ANN. § 11.15(b) (Vernon 1986). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX.FAM.CODE ANN. § 11.15(c) (Vernon 1986).

## PHYSICAL AND EMOTIONAL WELL-BEING OF THE CHILD

In his first, second, third and fourth points of error, Dupree claims there was no evidence, or in the alternative, insufficient evidence to support the jury's findings that Dupree (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered its physical or emotional well-being, or (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered its physical or emotional well-being. *See* TEX.FAM.CODE ANN. § 15.02(a)(1) (Vernon Supp.1995). Turner makes the same arguments in her first point of error. If the evidence is legally and factually sufficient under either subsection (D) or (E) of section 15.02(a)(1), we will overrule Dupree's first four points of error and Turner's first point of error to the extent she made the same arguments. *See In re S.H.A.,* 728 S.W.2d 73, 82 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Because the issues, arguments, and relevant facts overlap substantially, we address Dupree's first four and Turner's first and second points of error together.

### 1. Applicable Law

Under section 15.02(a)(1)(E), the cause of the danger to the child must be the parents' conduct, as evidenced not only by the parents' acts but also by the parents'

omissions or failures to act. *See S.H.A.,* 728 S.W.2d at 85. The conduct to be examined includes what the parents did both before and after the child was born. *Clark v. Clark,* 705 S.W.2d 218, 219 (Tex.App.—Dallas 1985, writ dism'd). To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct. *In re C.D.,* 664 S.W.2d 851, 853 (Tex.App.—Fort Worth 1984, no writ). The use of drugs during pregnancy may be conduct which endangers the physical and emotional well-being of the child. *In re Guillory,* 618 S.W.2d 948, 951 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ).

If imprisonment of the parent is the result of or is coupled with a course of conduct which places a child in conditions that endanger its physical or emotional well-being, then a judgment terminating the parent-child relationship may be justified. *Mayfield v. Smith,* 608 S.W.2d 767, 769 (Tex.Civ.App.—Tyler 1980, no writ).

## 2. Application of Law to Facts—Turner

■ Considering all the evidence before us, including evidence contrary to the judgment, we conclude there is sufficient evidence to support the jury's findings. Dr. Whitfield, an attending neonatologist at the hospital where the child was born, had been called in because Turner had gone into premature labor. Dr. Whitfield testified cocaine was present in the systems of Turner and the child at the time the child was born. Debbie Young, a social worker at Baylor, testified Turner informed the hospital staff she had smoked crack cocaine thirty minutes before giving birth. Turner also told the staff she had used crack cocaine at least once per week during her pregnancy. Turner testified she used cocaine the day she gave birth and throughout her pregnancy, and that she had used drugs since she was seventeen years old. *See Guillory,* 618 S.W.2d at 951.

Turner and Dupree had previously had a stillborn child together. Turner testified she had been diagnosed with syphilis prior to that pregnancy, but failed to take the antibiotics given to her. Turner had been told by doctors that syphilis had been a contributing cause to the death of that child. Turner stated she did not complete the treatment for syphilis after the stillborn child was delivered. Turner received almost no prenatal care during this pregnancy. *See Clark,* 705 S.W.2d at 219.

The child was premature, needed treatment for exposure to syphilis, and remained hospitalized for ten days. Turner testified she and Dupree visited the child once.

Turner had been convicted on a drug-related criminal charge in 1989 and was placed on probation. Turner had previously been incarcerated in the penitentiary for violating the terms of her probation and became pregnant after she was paroled. Turner spent much of her pregnancy avoiding the authorities because she knew an arrest warrant had been issued for her failure to report to the parole officer. Three months after the child was born, Turner was arrested on this warrant, and was incarcerated at the time of trial. *See Mayfield,* 608 S.W.2d at 769.

Based on the above, we conclude there was more than a scintilla of evidence supporting the findings that Turner knowingly placed or knowingly allowed the child to remain in conditions or surroundings, or engaged in conduct or knowingly placed the child with persons who engaged in conduct, that endangered its physical or emotional well-being. *See Sylvia M.,* 771 S.W.2d at 200. Viewing all of the evidence before us, including the evidence contrary to the judgment, we hold the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Sylvia M.,* 771 S.W.2d at 204. There was sufficient clear and convincing evidence to persuade the factfinder that Turner engaged in conduct prohibited by section 15.02 of the Texas Family Code. *See Sylvia M.,* 771 S.W.2d at 204. We overrule Turner's second point of error to the extent she complained that the evidence was legally and factually insufficient to support the jury's findings that (1) she engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the well-being of the child and (2) knowingly placed or allowed the child to remain in conditions or surroundings that endangered the well-being of the child.

### 3. Application of Law to Facts—Dupree

■ Considering all the evidence before us, including evidence contrary to the judgment, we conclude there is sufficient evidence to support the jury's findings. Dupree had been placed on probation in 1988 for possession with intent to deliver a controlled substance, cocaine. Dupree's probation file indicated he tested positive for cocaine twice in 1991. Although a motion to adjudicate was filed in 1991, it was apparently not ruled on at that time, and Dupree continued on probation. In 1992, Dupree's probation was revoked, and he was incarcerated for seventy-five days from December 1992 to March 1993. The basis for this revocation was never established at trial. In July of 1993, Dupree was arrested for disorderly conduct. This charge was pending at the time of trial. Turner's sister told the CPS investigator Dupree would give drugs to Turner to keep Turner "out of his stash." See Mayfield, 608 S.W.2d at 769.

Turner and Dupree had previously had a child together which was stillborn due to syphilis. Both Turner and Dupree had syphilis prior to that child's birth. They were told syphilis had contributed to the child's death. Nonetheless, during this pregnancy, there was almost no prenatal care. Only one visit to a doctor occurred. At delivery, the child tested positive for having been exposed to syphilis. Dr. Whitfield's testimony indicated this would have been discovered and treated if there had been prenatal care. Dupree testified he thought prenatal care was important, but unnecessary. See S.H.A., 728 S.W.2d at 85.

The CPS worker that visited Dupree's home a few days after the child's birth testified no preparations had been made for the baby. There was no formula nor diapers; they "were not prepared for this child to come home at all." Turner and Dupree visited the child only once during the ten days of hospitalization.

After Dupree's release from incarceration in March 1993, he failed to contact CPS to check on his child's welfare. Dupree's first contact with CPS occurred almost six months after his release, in August of 1993, when a caseworker visited him in his home. Before this, the case worker had tried paging Dupree repeatedly, but Dupree never responded. Dupree testified this was because he was busy.

In August 1993, Dupree was given a service plan by CPS requiring payment of child support in the amount of $25 per week, parenting classes, and supervised visitations with the child. Dupree failed to pay the child support, and, of the ten visitations scheduled, only four visits occurred. Dupree testified he had completed the parenting classes. The case worker testified that she would not recommend the child be returned to Dupree. This was based on his lack of compliance with the service plan and her assessment of Dupree from her personal contact with him. See S.H.A., 728 S.W.2d at 85.

The jury may have imputed Turner's drug-related endangerment of the child to Dupree. See Guillory, 618 S.W.2d at 951. This position was argued at trial by appellee. Dupree testified he had known Turner had a drug problem since 1988. Turner testified she had used cocaine weekly during the pregnancy, during which she lived with Dupree part of the time. Dupree testified he knew Turner had smoked crack during the pregnancy. Hospital staff testified Turner told them she had smoked crack cocaine thirty minutes before giving birth. Dupree testified he had been with Turner that day at his house.

Environmental conditions at Dupree's home were also poor. Dupree was on probation for a drug offense. Dupree's other girlfriend, who also was on probation resulting from a drug offense, was living in Dupree's home with her two children. The man that ran Dupree's "store truck" visited often, and also was on probation for drugs. Once Turner was released from prison, it was her intent to live in Dupree's home and care for the child. Dupree testified that Turner would return to his home once she got out of prison. They would then raise the child in his home together. Dupree testified he would knowingly allow drug users into his home, although he would not allow them to use drugs while there.

Based on the above, we hold there was more than a scintilla of evidence supporting

the findings of the jury that Dupree knowingly placed or knowingly allowed the child to remain in conditions or surroundings, or engaged in conduct or knowingly placed the child with persons who engaged in conduct, which endangered the child's physical or emotional well-being. *See Sylvia M.*, 771 S.W.2d at 200. Viewing all of the evidence before us, including the evidence contrary to the judgment, we hold the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Sylvia M.*, 771 S.W.2d at 204. There was sufficient clear and convincing evidence to persuade the factfinder that Dupree engaged in conduct prohibited by section 15.02 of the Texas Family Code. *See Sylvia M.*, 771 S.W.2d at 204.

We overrule Dupree's first four points of error and Turner's first point of error to the extent she made the same arguments.

## BEST INTEREST OF THE CHILD

In points of error five and six, Dupree argues that there is no evidence or, in the alternative, insufficient evidence, that termination of the parent-child relationship was in the best interest of the child. Tex.Fam.Code Ann. § 15.02(a)(2) (Vernon Supp.1995). Turner makes the same arguments with respect to Dupree under her first point of error and with respect to herself under her second point of error.

### 1. Applicable Law

 A trial court may terminate the parent-child relationship if the factfinder determines a parent has been found to have committed one or more of the acts contained within Family Code section 15.02(a)(1) and that "termination is in the best interest of the child." Tex.Fam.Code Ann. § 15.02 (Vernon Supp.1995). The relationship between a parent and child is one of constitutional dimensions, and we must recognize the presumption that the best interest of the child will be served by preserving the parent-child relationship. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976).

The Supreme Court of Texas has provided a nonexclusive list of factors for the factfinder to consider when ascertaining the best interest of a child:

 (a) the desires of the child;

 (b) the present and future emotional and physical needs of the child;

 (c) the present and future emotional and physical danger to the child;

 (d) the parenting abilities of the individuals seeking custody;

 (e) the programs available to assist these individuals to promote the best interests of the child;

 (f) the plans for the child by these individuals or by the agency seeking custody;

 (g) the stability of the home or proposed placement;

 (h) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and

 (i) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976). The *Holley* test focuses on the best interest of the child, not the best interest of the parent. *D.O. v. Texas Dept. of Human Servs.*, 851 S.W.2d 351, 358 (Tex. App.—Austin 1993, no writ).

### 2. Application of Law to Facts

 Turner and Dupree's drug-related conduct is a significant factor to which the jury could have attached great weight in evaluating the best interests of the child. Many of Turner's acts and omissions regarding the child are drug-related and due to her lack of control over her life. Turner's weekly use of crack cocaine during the pregnancy put the child at risk every time she introduced this drug into her system.

Turner had been using drugs since she was a teenager, although she had not been taking drugs since her current incarceration. Turner stated she planned to attend a drug rehabilitation program once she had the opportunity. Appellee argues Turner's inability to stay off drugs while pregnant raises doubts concerning her ability to stay off them once she is released. The evidence supports the jury's finding that the child would be exposed to danger if the child were

to live in the same house with her drug-addicted mother.

Dupree had been placed on probation in 1988 for possession with intent to deliver a controlled substance, cocaine. Dupree's probation file indicated he tested positive for cocaine twice in 1991. As a result, a motion to adjudicate was filed. However, the trial judge did not make a ruling on this matter, and Dupree continued on probation.

Turner's three previous children do not live with her. Her oldest child was removed by CPS in 1988, after Turner left him with a friend. Turner testified she knew the friend was a drug user at that time. Turner failed to attend the hearings concerning custody of her oldest child because she was on drugs at the time. Turner's second and third oldest children live with their respective fathers. Dupree has one child with a previous girlfriend, and has played no role in this child's upbringing. Turner's and Dupree's previous child together was stillborn at birth due to syphilis and a lack of medical treatment.

The need for permanence is the paramount consideration for the child's present and future physical and emotional needs. The goal of establishing a stable, permanent home for a child is a compelling interest of the government. *In re S.H.A.,* 728 S.W.2d at 92. Turner's incarceration makes her future uncertain.

Turner testified that her plan was for Dupree to take care of the child until Turner's release from prison. Turner would then return to Dupree's home. Dupree testified if the child was placed with him, he would live with the child in his house. At the time of trial, Dupree had lived at the same address for approximately three years. A CPS worker testified the residence was fairly clean, and that everyone there appeared to be "keeping up" their personal appearance. The son of Dupree's other girlfriend was in the house at the time, and he appeared to be properly managed and cared for.

The child has never lived with either appellant. Although a program known as protective day care does exist, a CPS representative testified it would not be appropriate in this case. Also, Dupree testified he does not believe in day care facilities.

Dupree's failure to visit his daughter for six months after his release from prison could indicate a lack of interest in the child. Dupree's initial contact with CPS was instigated by the case worker. We also note Dupree failed to complete the service program given to him by CPS.

Based on the above, we hold there was more than a scintilla of evidence supporting the findings that termination of Dupree and Turner's parental rights was in the best interest of the child. *See Sylvia M.,* 771 S.W.2d at 200. Viewing all of the evidence before us, including the evidence contrary to the judgment, we hold the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Sylvia M.,* 771 S.W.2d at 204. There was sufficient clear and convincing evidence to persuade the factfinder that termination of Dupree and Turner's parental rights was in the best interest of the child. *See Sylvia M.,* 771 S.W.2d at 204.

We overrule Dupree's fifth and sixth points of error. We overrule Turner's first point of error to the extent she made the same arguments with respect to Dupree and her second point of error to the extent she made them with respect to herself.

The evidence was legally and factually sufficient to support the jury's findings and the trial court's judgment. We overrule Dupree's and Turner's points of error. We affirm the trial court's judgment.