

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-12-0505-CV

_____

IN THE INTEREST OF J.D.S., A/K/A B.D.S., A/K/A B.B.S., A CHILD

On Appeal from the 110th District Court
Floyd County, Texas
Trial Court No. 10256, Honorable William P. Smith, Presiding

March 8, 2013

## MEMORANDUM OPINION

Before Quinn, C.J., and Campbell and Pirtle, JJ.

Based on a jury verdict, the trial court rendered judgment terminating the parental rights of the father[1] to his son, J.D.S. The parental rights of the child's mother also were terminated.[2] Through a single issue on appeal, the father challenges the sufficiency of

---

[1] Pursuant to appellate rule 9.8, we will refer to the child's parents as the father and the mother, and the child by his initials. Tex. R. App. P. 9.8.

[2] The mother filed an affidavit of relinquishment of parental rights. She has not appealed the judgment of termination.

the evidence supporting the finding that termination was in the best interest of J.D.S. We will affirm.

## Analysis

Termination of parental rights under Family Code § 161.001 requires proof by clear and convincing evidence that the parent committed one of the acts or omissions listed in § 161.001(1)(A)—(T) and that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2) (West Supp. 2012); *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003). Clear and convincing evidence is the degree of proof that produces in the mind of the factfinder a firm belief or conviction of the truth of the allegations to be proved. *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002).

The legal sufficiency analysis requires us to examine all of the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). We disregard all contrary evidence the factfinder could have reasonably disbelieved or found incredible. *Id.* However, we take into account undisputed facts that do not support the finding, so as not to "skew the analysis of whether there is clear and convincing evidence." *Id.*

The best interest of a child determination does not require evidence of a particular set of factors. *In re C.J.O.,* 325 S.W.3d 261, 266 (Tex.App.--Eastland 2010, pet. denied). In *Holley v. Adams,* 544 S.W.2d 367, 371-72 (Tex. 1976), the court provided a list of factors the trier of fact in a termination case may consider in determining the best interest of the child. These factors include (1) the desires of the

2

child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

The *Holley* factors are not exhaustive, and there is no requirement that the Department prove all factors as a condition precedent to parental termination. *In re C.H.,* 89 S.W.3d at 27; *Adams v. Tex. Dep't of Family & Protective Servs.,* 236 S.W.3d 271, 280 (Tex.App.--Houston [1st Dist.] 2007, no pet.). The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the children warrants termination of the parent-child relationship. *In re C.H.,* 89 S.W.3d at 28; *In re P.E.W.,* 105 S.W.3d 771, 779 (Tex.App.--Amarillo 2003, no pet.). And a best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re S.H.A.,* 728 S.W.2d 73, 86-87 (Tex.App.--Dallas 1987, writ ref'd n.r.e.). The trier of fact may measure a parent's future conduct by his past conduct and determine that it is in the child's best interest to terminate parental rights. *In re D.L.N.,* 958 S.W.2d 934, 941 (Tex.App.-- Waco 1997, pet. denied), *overruled on other grounds by In re C.H.,* 89 S.W.3d at 26.

The law recognizes a strong presumption that the best interest of a child is served by keeping custody in the natural parents. *In re D.T.,* 34 S.W.3d 625, 641

(Tex.App.--Fort Worth 2000, pet. denied).  We recognize also, however, that the court's inquiry examines the best interest of the child, not that of the parent.  *Dupree v. Texas Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 86 (Tex.App.--Dallas 1995, no writ).

The jury found that the parent-child relationship between the father and J.D.S. should be terminated.  Based on the jury's verdict, the trial court entered an order terminating the father's parental rights to J.D.S.  The order states the trial court's findings by clear and convincing evidence that the father:

> engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

> had his parent-child relationship terminated with respect to another child based on a finding that the father's conduct was in violation of § 161.001(1)(D) or (E), Texas Family Code, or substantially equivalent provisions of the law of another state;

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the child to the father; (2) the father has not regularly visited or maintained significant contact with the child; and (3) the father has demonstrated an inability to provide the child with a safe environment.

*See* Tex. Fam. Code Ann. § 161.001(1)(E), (M), (N) (West 2012).   Those findings are not challenged on appeal.

In 2002, the father met the mother at an Alcoholics Anonymous meeting.  A relationship followed but they never married.  At the time, the mother had children in the care of the Department including a daughter, M.S.  Contacts between the father and the

4

children concerned the Department because of allegations of arguments and domestic violence as well as the opinions of the mother's therapist.

After the Department returned M.S. to the mother, the child suffered a skull fracture, subdural hematoma, and bruising about her body. Dried blood was also noted on her upper lip and right nostril. The mother accused the father of causing these injuries. He denied the allegations and reported witnessing the mother attempt to "force feed" the child and losing her temper around her children. The mother ultimately pled guilty to a charge of injury to a child and was placed on community supervision for seven years. According to the Department, the father was aware of the danger to M.S. but did nothing to protect the child.

In May 2004, the mother gave birth to another child, V.S. The father was not certain of his paternity, and did not obtain a paternity test. His parental rights as an "alleged father" of the child were terminated in May 2005.[3] According to the Department, an alleged father is a father named by a mother when parents are not married and DNA testing is not performed.

In December 2006, the mother gave birth to B.B. The father believed this was his child and kept the baby in his home for six months following birth. The father's parental rights to B.B. were eventually terminated for failure to perform services and endangerment grounds because he allowed the mother access to B.B., a therapist's recommendation, the father's continued relationship with the mother, and issues of the

---

[3] Family Code § 161.002(b)(1) provides the trial court may terminate the rights of an alleged father if "after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160." Tex. Fam. Code Ann. § 161.002(b)(1) (West 2008).

father's anger and domestic violence toward the mother. A certified copy of a judgment terminating the father's parental rights to B.B. was admitted into evidence.

The evidence includes the father's admitted prior use of methamphetamine as well as marijuana and cocaine. He served time in a state jail and an incarceration substance abuse treatment program in relation to substance abuse. He testified he has been drug free since the 2001, but he conceded a positive result in a November 2008 hair follicle test.

J.D.S. was born May 2, 2011. The father believed he might be the child's father since he had intercourse with the mother during the month of conception. He said, however, she had other sexual partners. Ultimately, testing established the father's paternity.

The father was present at the hospital when J.D.S. was born. After the mother and J.D.S. left the hospital against medical advice, the father drove them to the residence of "some guy [the mother] was partying with." Believing the child was endangered because of the mother's criminal record, the court granted the Department a writ of attachment on May 4 and temporary conservatorship on May 11. The father refused to sign the Department's service plan and did not participate in any court-ordered services. By the time of trial, the father still had seen J.D.S. only on that one occasion, when he took the baby and his mother from the hospital to the house of "some guy." According to the Department caseworker, the father said he did not visit the child because he did not want to bond with him, only to lose him through termination.

6

The mother's community supervision was revoked in June 2012 and the court sentenced her to thirty years confinement in prison. In the present case, trial evidence included the State's motion to proceed with adjudication of guilt. It alleged that despite a condition of community supervision to the contrary, the mother had multiple contacts with the father during her term of community supervision.

The Department's case included the testimony of a therapist who counseled the father during the termination case regarding B.B. Based on twenty-six individual sessions and his observations of the father during the trial of the underlying case, the therapist rendered various opinions. He noted an anger problem and paranoia in the father and expressed "concern about his anger." In his opinion, these were "character traits that are not easily changed." He linked the father's pattern of behavior to his earlier drug use. The therapist gave the jury his opinion that based on the father's past behavior, J.D.S. could be at risk if placed with the father. From his observations at trial, the therapist also gave the opinion the father was having trouble thinking rationally and assembling facts. Because the therapist also treated the mother, he testified of her reports of the father's "angry episodes." The mother accused the father of choking an unidentified female, having a bipolar diagnosis, and breaking the windshield of her car.

The foster mother of J.D.S. intervened in the Department's suit and testified at trial. In addition to keeping J.D.S. as a foster child, she has adopted four children. Three of the adopted children and J.D.S. are siblings as the mother is their biological mother. She told the jury J.D.S. loves his brothers and sister and is excited to see them each morning. She testified she wants J.D.S. to be raised with his siblings, and that her intention is to adopt him if the father's parental rights are terminated. The Department

7

caseworker testified she had observed J.D.S. in the foster mother's home, and in her opinion he was "very happy" and "very bonded" to the foster mother. The foster mother testified to the support she receives from her family, friends and employer, enabling her to take care of the five children.

The father testified to his plans for meeting the basic needs of J.D.S. were the child in his custody. He owns, free of mortgage, the home where he has lived for five years. He described stable employment at a workplace near his home. The father generally touched on matters of childrearing such as discipline, meeting emotional needs, and sex education. He testified to concrete steps he had taken in anticipation of his custody of J.D.S., such as improving his home, determining the availability of health insurance, and considering a physician. As for the future, he hoped J.D.S. would grow into a "good young man," avoiding trouble and graduating high school, attending college, and perhaps entering the military. The father said he would not allow the mother contact with J.D.S.

Before the jury was undisputed evidence establishing three predicate grounds for termination including endangerment and constructive abandonment. Undisputed evidence showed the father effectively had no contact with his son. Further the therapist testified of the father's anger problem and paranoia and that if placed with the father J.D.S. could be at risk. After reviewing all the evidence in the light most favorable to the best interest finding, we hold that a reasonable juror could have formed a firm belief or conviction that terminating the father's parental rights was in the best interest of

J.D.S.  Therefore, the evidence was legally sufficient to support the best interest finding.[4]  The father's issue is overruled.

## Conclusion

Having overruled the father's sole issue on appeal, we affirm the judgment of the trial court.

James T. Campbell
Justice

---

[4] We interpret the father's issue as a legal sufficiency challenge based on the substance of his argument, preservation of the complaint by a motion for directed verdict, and the absence of a motion for new trial.  In a civil case tried by jury, preservation of a factual sufficiency challenge for review on appeal is through a motion for new trial before the trial court.  Tex. R. Civ. P. 324(b)(2); *In re A.J.L.,* 136 S.W.3d 293, 301-02 (Tex.App.--Fort Worth 2004, no pet.) (citing *Cecil v. Smith,* 804 S.W.2d 509, 510 (Tex. 1991)).  Had the father presented a factual sufficiency challenge, our holding would be the evidence was factually sufficient, under the required standard of review.  *See In re J.F.C.,* 96 S.W.3d at 266 (describing standard).