# Court of Appeals
## Tenth Appellate District of Texas

### 10-25-00068-CV

In the Interest of K.E.C. and N.S.L., Children

On appeal from the
474th District Court of McLennan County, Texas
Judge Nikki Mundkowsky, presiding
Trial Court Cause No. 2023-1124-6

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

Following a bench trial, the parental rights of K.E.C.'s and N.S.L.'s mother (Mother) were terminated.[1]  The trial court found by clear and convincing evidence that Mother had violated Family Code subsections 161.001(b)(1)(N) and (O) and that termination was in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b).  In three issues, Mother contends that the evidence was legally and factually insufficient to support the trial court's termination findings.  We will affirm.

---

[1] The parental rights of the respective fathers of K.E.C. and N.S.L. were also terminated, but they have not appealed.

The standards of review for legal and factual sufficiency of the evidence in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264–68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). The trial court, as factfinder, is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the Department of Family and Protective Services (the Department) must establish by clear and convincing evidence two elements: (1) that the respondent parent committed one or more acts or omissions enumerated under subsection (b)(1), termed a predicate violation, and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.-G.*, 612 S.W.3d 373, 381 (Tex. App.—Waco 2020) (mem. op.), *aff'd*, 627 S.W.3d 304 (Tex. 2021). Proof of one element does not relieve the petitioner of the burden of proving the other. *J.F.-G.*, 612 S.W.3d at 381.

PREDICATE VIOLATIONS

In her first two issues, Mother contends that the evidence was legally and factually insufficient to support the trial court's findings that she committed the predicate violations. We first address Mother's second issue, in which she argues that the evidence was legally and factually insufficient to

support the trial court's finding that she violated Family Code subsection 161.001(b)(1)(N).

Subsection (N) authorizes termination if the trial court finds, by clear and convincing evidence, that a parent has:

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>
> > (i)    the department has made reasonable efforts to return the child to the parent;
> >
> > (ii)   the parent has not regularly visited or maintained significant contact with the child; and
> >
> > (iii)  the parent has demonstrated an inability to provide the child with a safe environment.

TEX. FAM. CODE ANN. § 161.001(b)(1)(N).  Mother does not contest the sufficiency of the evidence to support that the children have been in the permanent or temporary managing conservatorship of the Department for not less than six months or that she has not regularly visited or maintained significant contact with the children.  Mother specifically challenges the sufficiency of the evidence to support that the Department made reasonable efforts to return the children to her and that, at the time of trial, she was unable to provide the children a safe home.  *See id.* § 161.001(b)(1)(N)(i), (iii).

Making "reasonable efforts to return the child to the parent" under subsection (N) does not necessarily mean that the child must be physically

delivered to the parent. *In re G.P.*, 503 S.W.3d 531, 533 (Tex. App.—Waco 2016, pet. denied). Generally, implementation of a family service plan by the Department is considered a reasonable effort to return a child to the parent. *A.D. v. Tex. Dep't of Fam. & Protective Servs.*, 673 S.W.3d 704, 714 (Tex. App.—Austin 2023, no pet.) (quoting *In re A.L.H.*, 468 S.W.3d 738, 744 (Tex. App.—Houston [14th Dist.] 2015, no pet.)).

Mother argues that the Department failed to show that it made reasonable efforts to return the children to her, as required by subsection (N), because although the Department showed that it created a service plan for her, the Department offered no evidence regarding any efforts that it made to return the children to her and offered no evidence regarding how the service plan fit within the Department's efforts to return the children. The record shows, however, that the Department presented evidence not just that it created Mother's service plan but that it also made efforts to implement the service plan. "[C]ourts have previously held that this element can be satisfied by preparing *and administering* a service plan." *G.P.*, 503 S.W.3d at 533 (emphasis added).

Here, Michelle Allison, the Department supervisor for this case, testified that the Department created a family plan of service for Mother in an effort to mitigate the concerns that had led to the children's involvement with the Department and their removal. Allison stated that the services listed on

Mother's family plan included that she participate in random drug testing, complete parenting classes, participate in individual therapy, complete a psychological evaluation, maintain safe and stable housing, and be able to provide for the children financially. The trial court took judicial notice of Mother's service plan as well as of the status order that approved Mother's service plan and that made the service plan an order of the court. Mother's service plan indicated that reunification with the children was the Department's goal if Mother complied with the required actions in the service plan.

When asked what efforts the Department had been making to try and engage Mother in her services, Allison testified that the Department workers had made attempts to contact Mother. Allison testified that she had received emails when Mother had inquired about the case and that the Department had responded to Mother and had made sure that Mother's referrals were available so that she could participate in services. Allison specifically confirmed that the Department had made efforts to engage Mother in drug testing so that she could visit her children through the Department. Allison stated, however, that the Department had not been able to get a drug-test result from Mother.

Allison further testified that at one point, Mother spoke with the caseworker and told the caseworker that she did not like the direction that the case was going. Allison explained that at that point, the Department provided

Mother with information on where they were in the case and made sure that all the service authorizations were correct. Allison also affirmed during her testimony that the Department had gone into an extension at the end of the initial one-year period to allow Mother to continue attempting to work services because the Department knew that the children's caregiver, the children's maternal aunt, was open to maintaining contact with Mother.

Mother testified conversely that she had reached out to the Department and that she had been unable to get any assistance. As noted above, however, the trial court, as factfinder, is the sole judge of the witnesses' credibility and demeanor. *J.O.A.*, 283 S.W.3d at 346. Based on the foregoing, we therefore conclude that a reasonable factfinder could have formed a firm belief or conviction that the Department made reasonable efforts to return the children to Mother. *See A.D.*, 673 S.W.3d at 714; *G.P.*, 503 S.W.3d at 533.

We next address Mother's challenge to the legal and factual sufficiency of the evidence to establish that she had demonstrated an inability to provide the children with a safe environment. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N)(iii). Here, Mother contends that the only way that the trial court could have found that she had demonstrated an inability to provide the children with a safe environment would have been to infer it from her lack of contact with the caseworker. Mother argues, however, that such an inference

would have impermissibly shifted the burden of proof to her to disprove the Department's allegations.

There are several factors to indicate a parent's willingness and ability to provide the child with a safe environment:

> the child's age and physical and mental vulnerabilities; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities.

*G.P.*, 503 S.W.3d at 533–34 (quoting *In re M.R.J.M.*, 280 S.W.3d 494, 506 (Tex. App.—Fort Worth 2009, no pet.)); *see* TEX. FAM. CODE ANN. § 263.307(b).

The evidence here showed that of the actions required by Mother's service plan, Mother had completed her psychological evaluation, completed her parenting class, and begun individual therapy. Mother testified regarding therapy that she had been going to counseling since the case had begun. She stated that she had been meeting with her counselor once a week and had therefore met with her counselor at least forty times during the pendency of this case. Mother further testified that her housing was stable at the time of trial. She stated that she was living in a motel and working with a housing stability program. She thought that she might have a residence by February 5,

2025. Mother acknowledged, however, that she had been homeless for about two weeks before moving into the motel. Additionally, Allison testified that the only counseling note that the Department had received was from one visit on December 9, 2024. The therapist reported in that note that Mother was working through some of her mental health issues at that time and was trying to become stable but that Mother still needed to work on those issues.

Mother also acknowledged at trial that she had been arrested for unauthorized use of a motor vehicle and possession of a controlled substance, methamphetamine. Mother stated that both of those cases were still pending at the time of trial. When asked when she had last used methamphetamine, Mother responded that she had "relapsed" and had used methamphetamine one time in late April 2023, just after the children had been removed.

Allison testified that because of concerns of potential drug use by Mother, Mother was required by her service plan to participate in random drug testing. But the Department had not been able to get a drug-test result from Mother. When a parent misses required drug tests, those missed tests are deemed positive. *See In re J.W.*, 645 S.W.3d 726, 734 (Tex. 2022) ("Mother missed twelve of fourteen scheduled drug tests, resulting in those missed tests being deemed positive."). Also, because of Mother's refusal to drug test, Mother's last visit with the children was in June 2023.

Mother explained that she had taken one drug test that was negative but that because no one had allowed her to see her children at that time, she stopped taking drug tests. Mother further justified her lack of drug testing by stating that her copy of the service plan said that it was not court-ordered. But Mother also acknowledged that she had come to court during the pendency of this case and that the trial court judge had talked to her about drug testing.

The children's maternal aunt, who was the children's caregiver at the time of trial, also testified that she did not think that Mother could support the children at that time. K.E.C. and N.S.L. were twelve and nine years old, respectively, at the time of trial. Mother testified that she had always had a job and sometimes had more than one job. Mother stated that she was currently working part-time and making about $600 per month and had another job that was supposed to start on February 4, 2025. Mother also stated that she had a vehicle and that she had insurance for the vehicle. But Mother acknowledged that her driver's license was currently suspended. Additionally, when the children's maternal aunt was asked what Mother had done during the pendency of this case to support the children, she stated only that Mother had, on one occasion, sent about $10 to $20 to get the children something at the store.

By failing to make contributions to the children's care, refusing to take required drug tests, and failing to maintain significant contact with the

children, the trial court could have reasonably concluded that Mother had demonstrated an inability to provide K.E.C. and N.S.L. with a safe environment. *See G.P.*, 503 S.W.3d at 534; *M.R.J.M.*, 280 S.W.3d at 506. We thus conclude that the evidence was legally and factually sufficient to support the trial court's finding that Mother violated subsection (N). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N). Mother's second issue is overruled.

We now turn to Mother's first issue in which she contends that the evidence was legally and factually insufficient to support the trial court's finding that she violated Family Code subsection 161.001(b)(1)(O). "To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d 230, 232–33 (Tex. 2019) (per curiam). Therefore, having concluded that the evidence was legally and factually sufficient to support the trial court's finding that Mother violated subsection (N), we need not address whether the evidence was legally and factually insufficient to support the trial court's finding that Mother violated subsection (O). *See id.*

BEST INTEREST OF THE CHILDREN

In her third issue, Mother contends that the evidence was legally and factually insufficient to support the trial court's finding that termination was in the best interest of the children.

In determining the best interest of a child, several factors have been consistently considered, which were set out in the Texas Supreme Court's opinion of *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* This list is not exhaustive but simply identifies factors that have been or could be pertinent in the best-interest determination. *Id.* at 372. There is no requirement that all these factors be proven as a condition precedent to parental termination. *See C.H.*, 89 S.W.3d at 27. The absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *Id.* In fact, while no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.— Houston [1st Dist.] 2017, pet. denied).

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). And evidence relating to the predicate grounds under subsection 161.001(b)(1) may be relevant to determining the best interest of the child. *See C.H.*, 89 S.W.3d at 28.

Mother asserts that there were clear indications that the children wished to live with her. As stated above, at the time of trial, K.E.C. and N.S.L. were twelve and nine years old, respectively. And the CASA supervisor agreed at trial that it sounded like K.E.C. and N.S.L. wanted to be placed with Mother if possible. The children's maternal aunt, who was the children's caregiver at the time of trial, further testified that K.E.C. loves Mother very much and wanted to live with Mother even if it meant living in a motel. On the other hand, the children's maternal aunt explained that K.E.C. had lived with her multiple times and that K.E.C. had said that if she could not live with Mother, she wanted to stay with her maternal aunt. The children's maternal aunt stated that K.E.C. was also thriving in school. K.E.C. had friends and was involved in several extracurricular activities. K.E.C. saw a therapist and was taking medication for ADHD.

The children's maternal aunt then testified regarding N.S.L. that she also loves Mother but that she did not want to leave her maternal aunt because her maternal aunt was stable. *See Dupree*, 907 S.W.2d at 87 ("The goal of

establishing a stable, permanent home for a child is a compelling interest of the government."). N.S.L. expressed to her maternal aunt that she wanted to still see Mother but that she was tired of going from place to place and did not want to live in a motel. The children's maternal aunt explained that N.S.L. has severe anxiety for which she takes medication.

The children's maternal aunt further asserted that she did not think that Mother could support the children at that time. And we discussed above that despite Mother's testimony about working, she had failed to make contributions to the children's care. We also discussed above that despite Mother's testimony that her housing was stable at the time of trial, she was living in a motel at that time, and she had been homeless for about two weeks before moving into the motel. The CPS caseworker additionally testified that the children had initially come into the Department's care and custody because the children were frequently being left with random people. The caseworker explained that the children were being left at various hotels and residences without proper supervision and care. *See In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015, at \*9 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.) (concluding that parent's failure to show he or she is stable enough to parent child for any prolonged period entitles factfinder to determine that pattern would likely continue and that permanency could only be achieved through termination and adoption).

Mother also acknowledged at trial that she had been arrested for unauthorized use of a motor vehicle and possession of a controlled substance, methamphetamine. Mother stated that both of those cases were still pending at the time of trial. Mother also admitted to using methamphetamine one time in late April 2023, after the children had been removed. And we discussed above that despite Mother's testimony that she completed some of the actions required by her service plan, she refused to take required drug tests, resulting in those tests being deemed positive. *See J.W.*, 645 S.W.3d at 734. Because of Mother's refusal to drug test, Mother also failed to maintain significant contact with the children. *See In re A.V.G.-P.*, No. 10-23-00294-CV, 2024 WL 1327908, at *2 (Tex. App.—Waco Mar. 28, 2024, no pet.) (mem. op.) ("Failing to regularly participate in visitation can reasonably be found to be emotionally endangering to the child's well-being.").

The children's maternal aunt testified that she would like to adopt K.E.C. and N.S.L. *See In re J.D.*, 436 S.W.3d 105, 119–20 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("The fact finder may compare the contrasting plans for a child by the parent and the Department and consider whether the plans and expectations of each party are realistic or weak and ill-defined."). She stated that she loves Mother, her sister, very much and that she wants the children to continue to have a relationship with Mother but that keeping Mother's parental rights intact creates a financial hardship for her. She

explained that to continue to care for K.E.C. and N.S.L., she needs the financial assistance that would come from adopting the children. *See In re B.H.R.*, 535 S.W.3d 114, 124 (Tex. App.—Texarkana 2017, no pet.) ("A fact-finder may consider the consequences of its failure to terminate parental rights and that the best interest of the child may be served by termination so that adoption may occur rather than the impermanent foster care arrangement that would result if termination were to not occur."). She stated that she can sustain the housing and regular bills but that the children have different therapy and doctors' appointments and are involved in various activities that require money. The children's maternal aunt further explained that she has three other adopted children, as well as her grandchildren, in her care.

There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). However, considering all the evidence here in the light most favorable to the trial court's finding and considering the evidence as a whole, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in the best interest of K.E.C. and N.S.L. Accordingly, Mother's third issue is overruled.

In light of the foregoing, we affirm the trial court's order of termination.

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  July 24, 2025

Before Chief Justice Johnson,
   Justice Smith, and
   Justice Harris
Affirmed
CV06

