# Court of Appeals
## Tenth Appellate District of Texas

10-25-00318-CV

In the Interest of J.T. and J.T., Children

On appeal from the
472nd District Court of Brazos County, Texas
Judge G. Jerrell Wise, presiding
Trial Court Cause No. 23-001388-CV-472

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

Following a bench trial, the parental rights of J.T. (Father) and C.J. (Mother) to the children, J.T. and J.T.,[1] were terminated.  The trial court found by clear and convincing evidence that Father had violated Family Code subsection 161.001(b)(1)(D), Mother had violated Family Code subsection 161.001(b)(1)(E), and termination was in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b).  Father and Mother appealed.  We will affirm.

---

[1] Because the children's initials are the same, we will use "JU" to refer to the older child and "JA" to refer to the younger child.

## A. Father's Appeal

Father raises two issues in his brief. First, he contends that the Department failed to make reasonable efforts to return the children to the parent. Second, he argues that termination was not in the best interest of the children.

### 1. Section 161.001(f): Reasonable Efforts to Return

In his first issue, Father argues that "the Department failed to make reasonable efforts to return the children to the parent as per Tex. Fam. Code §161.001(f) after the Court ordered a family therapist for the Mother and Father."

Texas Family Code requires the trial court to make a finding that the Department made reasonable efforts to return the children to the parent:

(f) In a suit for termination of the parent-child relationship filed by the Department of Family and Protective Services, the court may not order termination of the parent-child relationship under Subsection (b)(1) unless the court finds by clear and convincing evidence and describes in writing with specificity in a separate section of the order that:

(1) the department made reasonable efforts to return the child to the parent before commencement of a trial on the

merits and despite those reasonable efforts, a continuing danger remains in the home that prevents the return of the child to the parent[.]

TEX. FAM. CODE ANN. §161.001(f).

When considering a factual-sufficiency challenge to a reasonable-efforts finding, we must review the whole record—including the disputed evidence contrary to the finding—to decide whether a factfinder could reasonably form a firm conviction or belief that the Department made reasonable efforts to return the child to the parent. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re R.C.*, No. 02-25-00494-CV, 2025 WL 3683988, at *4 (Tex. App.—Fort Worth Dec. 18, 2025, no pet. h.) (mem.op.). The Department's implementation of a family service plan is generally considered a reasonable effort to return the child to the parent. *See, e.g., A.D. v. Tex. Dep't of Fam. & Protective Servs.*, 673 S.W.3d 704, 714 (Tex. App.—Austin 2023, no pet.); *In re J.S.S.*, 594 S.W.3d 493, 503 (Tex. App.—Waco 2019, pet. denied). However, evidence of a service plan is not the exclusive means of establishing the Department's reasonable efforts to return the child. *See In re J.G.S.*, 550 S.W.3d 698, 704–05 (Tex. App.—El Paso 2018, no pet.); *see also In re Y.T.A.-D.*, No. 14-24-00161-CV, 2024 WL 3715392, at *7 (Tex. App.—Houston [1st Dist.] and [14th Dist.] Aug. 8, 2024, no pet.) (mem. op.).

Here, the trial court made the following findings regarding the Department's reasonable efforts to return the children:

6.1. The Court finds by clear and convincing evidence that the Department made reasonable efforts to return the children to the parents. However, despite those reasonable efforts to return the children home to the parents, a continuing danger remains in the home that prevents return.

6.2. The Court specifically finds that those reasonable efforts include the following:

6.2.1. The Department created a family service plan that is narrowly tailored to address any specific issues identified.

6.2.2. The Department made a referral for services, provided services, or paid for services.

6.2.3. The Department made the following additional reasonable efforts to return the children home to the parents:

Provided weekly visitation for each parent and maintained contact with each parent.

Father specifically argues that the Department failed to make reasonable efforts to return the children to the parents by failing to facilitate a family therapist for Mother and Father as ordered by the court. However, the evidence established that the Department made efforts to implement family therapy in support of reunification. Susan Sands, the CASA supervisor assigned to the case, testified to the process of selecting a counselor for JU, which began with individual sessions to build rapport between Dr. Duncan and

JU before bringing Mother and Father into sessions. Dr. Duncan testified that he included Mother and Father in some of JU's counseling sessions, which initially went well, so Dr. Duncan recommended increased visits between JU and Mother and Father. After an argument occurred between Mother, Father, and Aunt during a handoff of the children, Sands and Dr. Duncan both testified that there were concerns about the relationship between Dr. Duncan and JU deteriorating if family therapy continued. These concerns led to the decision that Dr. Duncan would remain JU's individual therapist and a new family therapist would be found. Sands stated that while efforts were made to find a new family therapist, they were unable to reestablish family therapy. Sands stated that it was child-driven therapy; she explained that before family therapy can begin, the therapists first meet with the child, and then the parents join when the child is ready. Sands testified that Mother and Father "wanted family therapy to instantly start, but that's not how it works." She stated that the Department did not fail to set up family therapy as court-ordered; they tried to find a therapist and were unable to do so. She confirmed that they followed up with every potential lead of a new family therapist, including a name that Father brought to the Department and both parents' individual therapists.

Ultimately, "the issue is whether the Department made reasonable efforts, not ideal efforts." *In re A.S.*, No. 10-21-00272-CV, 2022 WL 1041238, at *6 (Tex. App.—Waco Apr. 6, 2022, pet. denied). There is sufficient evidence here for the factfinder to conclude that the Department made reasonable efforts to facilitate reunification by the Department's attempts to implement family therapy.

Therefore, we overrule Father's first issue.

2. Best Interest

In his second issue, Father argues that the evidence presented was insufficient to establish that termination of the parent-child relationship between Father and the children would be in the best interests of the children.

In determining the best interest of a child, several factors have been consistently considered, which were set out in the Supreme Court of Texas's opinion of *Holley v. Adams*. 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child

relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* This list is not exhaustive but simply identifies factors that have been or could be pertinent in the best-interest determination. *Id.* At 372. There is no requirement that all these factors be proven as a condition precedent to parental termination. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *Id.* In fact, while no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] and [14th Dist.] 2017, pet. denied).

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). And evidence relating to the predicate grounds under subsection 161.001(b)(1) may be relevant to determining the best interest of the child. *See C.H.*, 89 S.W.3d at 28. Father does not contest the sufficiency of the evidence supporting the trial court's finding pursuant to subsection (D).

Regarding the emotional and physical needs of the children now and in the future, the need for permanence is the paramount consideration. *In re*

*A.R.C.*, 551 S.W.3d 221, 227 (Tex. App.—El Paso 2018, no pet.); *Dupree*, 907 S.W.2d at 87. Regarding the emotional and physical danger to the children now and in the future, evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue.").

The children were removed following an outcry from JU that Mother pulled JU by her hair down the stairs when Mother was intoxicated. Madison Gressett, a Department investigation supervisor, testified that she was concerned about Mother's physical abuse and that Father was not doing enough to protect JU from Mother's abuse. Father testified that alcohol was a problem for Mother, but he stated that he believed that JU was exaggerating the hair-pulling incident with Mother and that he did not believe her outcry about Mother. JU also made an outcry of sexual abuse against Father's brother, which Father stated he was aware of but did not take steps to protect her. Additionally, Father was aware that Mother and one of Mother's older children were violent with each other in front of JU and JA, but he stated he was not concerned about the children's safety. From this evidence, the trial court could have inferred that Father was aware of the risks of violence and

sexual assault to JU and JA but did not take appropriate steps to protect them. *See In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied).

The record also contains evidence of Father's own violent conduct. After removal, JU made an outcry that Father had physically abused her. Mother testified that Father had been violent with her older children. Mother also testified that Father had been violent with her on multiple occasions, sometimes resulting in significant injuries. In his testimony, Father stated that, although he called police over twenty times, his arguments with Mother did not become physical and that he did not fear for his children's safety. However, Father later he admitted that he had been "assaultive" towards Mother and that it was not a good environment for the children. From this evidence, the trial court could have found that Father was violent with the children or exposed them to violence within the home.

Regarding the plans for the children by the individuals or agency seeking custody and the stability of the home or proposed placement, the factfinder may compare the parent's and the Department's plans for the child and consider "whether the plans and expectations of each party are realistic or weak and ill-defined." *In re J.D.*, 436 S.W.3d 105, 119–20 (Tex. App.—Houston [1st Dist.] and [14th Dist.] 2014, no pet.). A parent's failure to show that he or she is stable enough to parent children for any prolonged period entitles the

factfinder "to determine that [the] pattern would likely continue and that permanency could only be achieved through termination and adoption." *In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015, at \*9 (Tex. App.—Houston [1st Dist.] and [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.). A factfinder may also consider the consequences of its failure to terminate parental rights and that the best interest of the children may be served by termination so that adoption may occur rather than the temporary foster-care arrangement that would result if termination did not occur. *In re B.H.R.*, 535 S.W.3d 114, 124 (Tex. App.—Texarkana 2017, no pet.). The goal of establishing a stable, permanent home for a child is a compelling state interest. *Dupree*, 907 S.W.2d at 87.

There is significant evidence that both children are doing well in Aunt's care. *See Hann v. Tex. Dep't of Protective and Regulatory Servs.*, 969 S.W.2d 77, 83 (Tex. App.—El Paso 1998, pet. denied). Dr. Duncan testified about the effects of the physical abuse on JU, specifically that JU fears potentially having to return home and that abuse, arguing, and yelling would continue. JU also expressed fears for JA because JU does not want JA to experience the same abuse. In contrast, Dr. Duncan stated that JU described living with Aunt as "fun, loving, kind, that [Aunt] was paying attention to the things that were important to her. [JU] felt comfortable in [Aunt's] presence, there was no

hesitation."  Dr. Duncan also stated that he has worked with Aunt on introducing certain parenting techniques to help JU, and that Aunt has been open to parenting advice and appears to be implementing the techniques.  Dr. Duncan opined that JU would need long-term therapeutic support because of what she has been through to address relationship issues and emotional outbursts.  He stated that he believes Aunt is committed to meeting JU's therapeutic needs long-term.  Aunt testified that JA is thriving in her care and does not have any behavioral or medical issues.  Sands also testified that Aunt puts the children's needs first.

Based on the foregoing evidence, the trial could have reasonably formed a firm belief or conviction that termination of Father's parental rights to the children is in the children's best interest.

Accordingly, Father's second issue is overruled.

## B. Mother's Appeal

Mother filed a notice of appeal from the trial court's order terminating her parental rights to JU and JA.[2]  Counsel for Mother has now filed an *Anders* brief, asserting that they diligently reviewed the record and that, in their opinion, the appeal is frivolous.  *See Anders v. California*, 386 U.S. 738, 87

---

[2] The trial court found by clear and convincing evidence that Mother had violated Family Code subsection 161.001(b)(1)(E) and that termination was in the child's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1).

S.Ct. 1396, 18 L.Ed.2d 493 (1967); *In re E.L.Y.*, 69 S.W.3d 838, 841 (Tex. App.—Waco 2002, order) (per curiam) (applying *Anders* to termination appeal).

Counsel's brief meets the requirements of *Anders*; it presents a professional evaluation demonstrating why there are no arguable grounds to advance on appeal. *See In re Schulman*, 252 S.W.3d 403, 406 n.9 (Tex. Crim. App. 2008) ("In Texas, an *Anders* brief need not specifically advance 'arguable' points of error if counsel finds none, but it must provide record references to the facts and procedural history and set out pertinent legal authorities."); *Stafford v. State*, 813 S.W.2d 503, 510 n.3 (Tex. Crim. App. 1991). Counsel has carefully discussed why, under controlling authority, there is no reversible error in the trial court's order of termination. Counsel has further informed us that he has served appellant with a copy of his *Anders* brief, informed appellant of her right to review the appellate record and to file a pro se response, and provided appellant with a form motion for pro se access to the appellate record. *See Anders*, 386 U.S. at 744, 87 S.Ct. at 1400; *Kelly v. State*, 436 S.W.3d 313, 319–20 (Tex. Crim. App. 2014) ; *Stafford*, 813 S.W.2d at 510 n.3; *High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. [Panel Op.] 1978); *see also Schulman*, 252 S.W.3d at 408–09. By letter, we also informed Mother of her right to review the record and to file a *pro se* response. She did not file a *pro se* response.

Upon receiving an *Anders* brief, we must conduct a full examination of all the proceedings to determine whether the appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 349–50, 102 L.Ed.2d 300 (1988). An appeal is "wholly frivolous" or "without merit" when it "lacks any basis in law or fact." *McCoy v. Court of Appeals*, 486 U.S. 429, 438 n.10, 108 S.Ct. 1895, 1902 n.10, 100 L.Ed.2d 440 (1988). We have reviewed the entire record and counsel's brief and have found nothing that would arguably support an appeal.[3] *See Bledsoe v. State*, 178 S.W.3d 824, 827–28 (Tex. Crim. App. 2005) ("Due to the nature of Anders briefs, by indicating in the opinion that it considered the issues raised in the briefs and reviewed the record for reversible error but found none, the court of appeals met the requirements of Texas Rule of Appellate Procedure 47.1."); *Stafford*, 813 S.W.2d at 509.

---

[3] Counsel reviewed the sufficiency of the evidence supporting the trial court's findings as to Mother under Family Code subsections 161.001(b)(1)(E) and determined that it would be frivolous to attack the findings. We also conclude that the evidence is sufficient to establish that Father violated subsection (E). *See In re N.G.*, 577 S.W.3d 230, 232–33, 237 (Tex. 2019) (per curiam) (holding due process and due course of law requirements mandate appellate court detail its analysis if appellate court affirms termination on either subsection (D) or (E)). As stated above, many factors can support an endangerment finding, including a parent's failure to complete a court-ordered service plan, missed visits with the child, and conduct that generally subjects a child to a life of instability and uncertainty. *In re A.R.M.*, 593 S.W.3d 358, 371-372 (Tex. App.—Dallas 2018, pet. denied). The record here shows that Mother assaulted JU on more than one occasion, abused alcohol, and took actions that put the children in danger. JU alleged that Mother pulled her out of bed by her hair and dragged her down the stairs by her hair after Mother had been drinking. The evidence shows a history of domestic violence reports in which Mother was both victim and aggressor. After removal, the children were placed with Aunt, with whom Mother had a contentious relationship. During the pendency of the case, Mother hired a private investigator and posted his report online, including the Aunt's address which was the children's placement. Due to safety concerns, the children had to be placed in foster care, where JU's emotional state deteriorated to the point that psychiatric care was necessary. Mother expressed happiness that the children were removed from Aunt's care, despite reports that the children had been thriving under Aunt's care.

## C. Conclusion

In light of the foregoing, we affirm the trial court's order of termination.[4]

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  February 12, 2026

Before Chief Justice Johnson,
        Justice Smith, and
        Justice Harris
Affirmed
CV06



---

[4] We also remind Mother's appointed appellate counsel that if Mother, after consulting with counsel, desires to file a petition for review, counsel is still under a duty to timely file with the Supreme Court of Texas "a petition for review that satisfies the standards for an *Anders* brief."  *See id.*; *In re G.P.*, 503 S.W.3d 531, 535 (Tex. App.—Waco 2016, pet. denied); *see also* TEX. FAM. CODE ANN. § 107.016.